■ In the Matter of MARIA M. and Another, Children Alleged to be Neglected and/or Abused. APOLONIA M ., Respondent; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant. [664 NYS2d 440] —Order, Family Court, Bronx County (Myrna Martinez-Perez, J.), entered June 5, 1997, which, after a hearing held pursuant to Family Court Act § 1028, released the subject child, Marisela M., to the custody of the non-respondent father, Hector M., pending a fact-finding hearing, unanimously reversed, on the facts, without costs, and the subject child remanded to the temporary custody of the Commissioner of Social Services. Temporary Order of Protection, same court and Justice, entered June 5, 1997, directing that the respondent mother, Apolonia M., who lives with Hector M., "is not to be left alone with Marisela * * * and must be supervised at all times by non-respondent father", unanimously vacated as moot.

The Commissioner filed the underlying petition in May 1997, alleging that Apolonia M. abused her 17-year-old daughter, Maria M., and neglected her 5-year-old daughter, Marisela M. At that time, Apolonia lived in the Bronx with her daughters and with Marisela's father, Hector. The Commissioner took temporary custody of the girls pending the final custody determination. Hector M. did not challenge the removal of Maria, but sought the return of Marisela. He sought a hearing pursuant to Family Court Act § 1028 seeking the return of a child temporarily removed. Before the hearing, the Commissioner offered to return Marisela to Hector's custody provided that he and Marisela lived apart from Apolonia during the pendency of the underlying proceedings, but Hector refused.

The section 1028 hearing commenced on May 22, 1997. At the hearing, the caseworker from the Administration for Children's Services testified that Maria had told her that her

mother had scratched her face with a ring, and had hit and kicked her when a neighbor tried to intervene. Apolonia had apparently been angry that Maria had relayed Apolonia's derogatory comment about the neighbor to her. Maria told the caseworker that this was not the first time her mother had hit her. The caseworker and the police then went to the house to execute a removal of Maria. Apolonia said she was too upset to discuss the problems she was having with Maria. When the police suggested they go to the precinct, Apolonia locked herself in the bathroom with Marisela and threatened to kill herself. Hector was unable or unwilling to intervene effectively, so the police had to break down the door.

Apolonia later told the caseworker that she had not scratched Maria, but rather, that the rings had. The caseworker learned from her that Apolonia had 18 other children in Puerto Rico. Some of them were living with relatives, while others were living with adoptive or foster families. Apolonia was not well-informed about where all of her children had been placed or why some had been taken from her by the Department of Social Services in Humacao. She was also vague about the circumstances surrounding the death of one of her children at the age of two months.

When the caseworker tried talking to Hector about Apolonia's relationship with Maria, he became agitated and refused to discuss it in Apolonia's presence. Later that day, he called the caseworker from another location, saying that he was afraid to call when Apolonia was around because of her violent temper. He had no further information about her other children in Puerto Rico, since he did not get involved with the children who had been born before his marriage to her.

At the section 1028 hearing, Hector denied having expressed fear of Apolonia. He said that although he was not employed and was home all day, his wife was the one in charge of the children. Hector also stated that he had five other children who lived in Puerto Rico with their mother.

The Family Court took note of Apolonia's serious abuse of Maria, but said there was no evidence that Marisela had been abused. The court considered Hector's lack of criminal history and the fact that he had never had any prior involvement with child protective authorities. It implied that the child welfare authorities had not made reasonable efforts to prevent or eliminate the need for removal, as Hector had testified that no caseworker had offered them any services before the police came to execute the removal. The court concluded that removal while the case was pending was not "necessary to avoid an im-

minent risk to the child's life or health," as required by section 1028. Instead, it imposed a less drastic remedy: an order of protection, dictating that Apolonia could not be left alone with Marisela and could only have contact with her under Hector's supervision.

On this appeal, both the Commissioner and the Law Guardian argue that the Family Court abused its discretion by remanding Marisela to her father's custody pending the neglect hearing, as there are serious unresolved issues concerning her mother's mental condition and her father seems to be under her mother's domination. We agree.

Though there is no evidence that Marisela was physically abused, "[t]he Family Court Act does not require actual injury as a condition precedent to a finding of imminent risk" (*Matter of Erick C.*, 220 AD2d 282, 283 [where parents physically abused infant, the "safer course" was to remove all three of the children pending a fact-finding hearing]). Moreover, Apolonia arguably neglected Marisela's welfare by subjecting her to the trauma of seeing her sister abused, and by locking Marisela in the bathroom with herself while threatening suicide. By forcing the police to break down the door, she exposed Marisela to possible injury, as well as emotional trauma. Apolonia's lack of knowledge as to the whereabouts (and in one case, the cause of death) of her many children also suggests that she is an irresponsible caretaker, and further supports a determination that she poses a danger to other children in her custody, even in the absence of evidence that she has abused them (*Matter of Cruz*, 121 AD2d 901, 903 [mother's abuse and neglect of other children justified removal of the infant whom she had not abused]). One may also infer that by issuing the protective order, the Family Court implicitly found that it thought Apolonia posed a danger to Marisela.

The protective order was insufficient to remove the risk that Apolonia might injure Marisela during one of her violent outbursts. It is unlikely that Hector would be able to protect his daughter, since he was so intimidated by his wife that he had to call the caseworker from an outside phone. He failed to intervene effectively when she locked herself in the bathroom with Marisela. In addition, the fact that he refused to separate temporarily from his wife in order to regain custody of Marisela shows that he is more interested in preserving his relationship with his wife than in protecting Marisela in the event of a conflict. Thus, the protective order did not eliminate the risk of further dangerous contact between Marisela and the person who posed a threat to her welfare (*Matter of Valerie Leonice T.*, 107 AD2d 327, 329; *Matter of William C.*, 209 AD2d 408, 409).

This decision relates solely to the father's section 1028 petition, and should not be interpreted as expressing this court's view of the appropriate final disposition of the neglect petition (*Matter of Karenae B.*, 199 AD2d 160, 162). Concur—Sullivan, J. P., Rosenberger, Williams and Andrias, JJ.