[673 NYS2d 96]

In the Matter of KIMBERLY H., a Child Alleged to be Neglected. ELIZABETH H., Respondent; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant.

First Department, May 12, 1998

## APPEARANCES OF COUNSEL

*Jane L. Gordon* of counsel (*Barry P. Schwartz* on the brief; *Jeffrey D. Friedlander, Acting Corporation Counsel* of New York City, attorney), for appellant.

*Kao Pin Lew* for respondent.

*Emily L. Kitay* of counsel (*Jane M. Spinak, Law Guardian*), for infant.

## OPINION OF THE COURT

SAXE, J.

The issue presented by this appeal is, in a derivative neglect proceeding involving a newborn infant, what weight should be accorded a finding, issued shortly before the infant's birth, that the infant's siblings were at imminent risk of harm due to excessive corporal punishment by their mother, requiring their removal from the home.

When Kimberly H. was born on November 3, 1997, her mother, respondent Elizabeth H., already had three other children, ages 5, 6 and 7. However, pursuant to petitions filed on July 8, 1997, in which it was alleged that the children had marks and recent welts as well as old scars on their bodies from beatings with a belt by respondent, Kimberly's siblings have resided in the kinship foster home of a maternal aunt since July 1997 and continuing through the time of this proceeding, under the supervision of the foster care agency St. Christopher-Ottilie.

In regard to Kimberly's siblings, a full fact-finding hearing was held on October 23, 1997 (Family Ct Act § 1044), following which the court found that respondent Elizabeth H. had inflicted excessive corporal punishment on one of her sons. The court then made derivative neglect findings as to the other two children.

On December 2, 1997, almost one month after Kimberly's birth, the Commissioner of Administration for Children's Services (ACS) commenced a derivative neglect proceeding on behalf of Kimberly, based upon the prior findings of neglect against respondent concerning her three older children. Kimberly was then remanded to the protection of the Commissioner pending the completion of a hearing (Family Ct Act § 1028) to determine if Kimberly was at imminent risk if returned to respondent's care.

At the section 1028 hearing, begun on December 4, 1997, the court, which had previously presided over the fact-finding hearing regarding Kimberly's three older siblings, took judicial notice of the prior findings of neglect made against respondent. The remaining evidence was presented through the testimony of Charita Thomas, a supervisor and caseworker for ACS, who was first assigned to the H. family on September 15, 1997.

Ms. Thomas first learned of Kimberly's birth on November 24, 1997, because St. Christopher-Ottilie, the foster care agency in charge of supervising the foster care of respondent's other three children, failed to inform her when respondent gave birth. Instead, Ms. Thomas was notified of Kimberly's birth by a representative of the Alianza Dominicana Family Preservation Program (Alianza), a program run by a community-based preventive-services agency that was assisting respondent.

According to Ms. Thomas, a caseworker from the children's foster care agency made a home visit on November 7th, and noted that respondent-mother had "made adequate preparation for the baby," inasmuch as the baby had been provided with a bassinet, diapers, clothing, formula and other necessary accessories. Additionally, a preventive-services worker from the Alianza organization made home visits on November 5th and November 19th, and reported that the infant appeared to be fine. It was also noted that respondent appeared for appointments at the agency on November 11, November 23 and December 3.

It was further established at the hearing that since August 1997 respondent has participated in individual counseling sessions every other week at the Alianza office, and that she began parenting-skills classes on October 6, 1997, which she was scheduled to complete on December 15, 1997.

Respondent's counselor at Alianza had also informed Ms. Thomas that she intended to offer respondent a more intensive parenting course; however, Ms. Thomas did not inquire as to the reason for the counselor's suggestion.

Ms. Thomas also testified that respondent's therapist, Ms. Guillen, informed her that respondent was dealing with issues of separation, discipline and how to manage her children, and that, although respondent had initially been depressed, she was now cooperative and receptive to treatment. Ms. Thomas conceded that she had never asked respondent's therapist if it were safe for the child to be returned to respondent.

Following completion of the section 1028 hearing, on December 12, 1997, the Family Court issued the order now on

appeal, in which it found that Kimberly would not be at imminent risk if returned to her mother, and paroled the child to respondent, pending the full fact-finding hearing, on condition that respondent continue to fully cooperate with her ongoing therapy and parenting classes, and that the Family Preservation Program provide assistance in the home for four hours every other day.

Although Family Court Act § 1028 " 'establishes a preference for returning the child' " (Besharov, 1985 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1028, 1997-1998 Pocket Part, at 179), if evidence establishes that removal is necessary to prevent imminent risk to the child's life or health, the "safer course" is to keep the child in the custody of the Commissioner pending determination of the fact-finding hearing (*Matter of Erick C.*, 220 AD2d 282, 283; *Matter of Child Welfare Admin. [Jean L.] v Danielle R.*, 225 AD2d 692; *Matter of Caroline C.*, 206 AD2d 529). In order to justify a finding of imminent risk, the Commissioner need not prove that the child has suffered actual injury (*Matter of Maria M.*, 244 AD2d 255).

While the petitioner agency has the burden of proving that the return of the child to the parent presents an imminent risk to the child's life or health (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1028, at 334), proof of the abuse or neglect of one child is admissible evidence on the issue of abuse or neglect of a sibling (Family Ct Act § 1046 [a] [i]), and in appropriate cases it can be sufficient alone to sustain a finding of abuse or neglect (*see, Matter of Cruz*, 121 AD2d 901, 902). Furthermore, where a prior finding of abuse or neglect as to one child is so proximate in time to the derivative proceeding that it can reasonably be concluded that the condition still exists, "the condition is *presumed* to exist currently and the respondent has the burden of proving that the conduct or condition cannot reasonably be expected to exist currently or in the foreseeable future" (*Matter of Cruz, supra*, at 903 [emphasis added]).

Thus, in *Cruz*, where findings of neglect had been made by the Family Court with regard to the siblings of a newborn infant, based upon an incident that had occurred two months before the infant's birth, this Court disagreed with the Family Court's conclusion that the misconduct was not sufficiently contemporaneous with the petition regarding the infant. Nor should the court rely upon the assertion that the type of

mistreatment inflicted on the older children—in *Cruz*, handcuffing them to a bed—is a type not likely to be inflicted on an infant (121 AD2d, *supra*, at 902).

Where a parent has a history of excessive corporal punishment, and there is no change of circumstances, a substantial likelihood exists that the established pattern will continue. Where a finding of neglect has recently been made based upon excessive corporal punishment by a parent, the Family Court "cannot and should not 'await broken bone or shattered psyche before extending its protective cloak around [a] child'" (*Matter of Cruz*, 121 AD2d 901, 903, *supra*, quoting *Matter of Anthony*, 81 Misc 2d 342, 345).

Of course, it may be established that circumstances have changed, for instance by means of a parent's participation in therapy or a parenting program. However, such participation alone, while laudable and necessary, does not by itself establish that a person with a history of abuse or neglect of her children has successfully overcome her prior inclinations and behavior patterns, despite what may be the best of intentions. Indeed, in this case it is noteworthy that a clinical report issued by a psychiatrist with Family Court Mental Health Services on January 22, 1998, after the challenged order was issued, concluded that respondent was "still at significant risk for loss of control."

Here, notwithstanding (1) the contention of Kimberly's Law Guardian that the prior report of neglect involving Kimberly's siblings was "discredited," and (2) the Family Court's statement that in the hearing regarding Kimberly's siblings it rejected as incredible the testimony of respondent's husband, the Family Court's finding of neglect in October 1997 cannot be ignored or minimized. Its factual determination at the close of that fact-finding hearing necessarily entailed a conclusion that as of that date, respondent's children were at risk.

A new infant is the most vulnerable of creatures, utterly unable to either defend herself or report mistreatment. Therefore, we must ensure that our laws and our courts provide them with all the protection available.

Since the court recently determined that the infant's older siblings must remain removed from respondent's home *for their own safety*, and, at the time of the derivative proceeding involving Kimberly, her siblings *still* remained in foster care, it was an improvident exercise of discretion for the court to put such unbridled trust in the possibilities for redemption offered by intervention services—particularly when most of these services

were well underway at the time the court determined that the older children were still at risk of imminent harm. The safer course of action is for Kimberly to also remain removed from the parent's home pending full fact finding (see, Matter of Erick C., 220 AD2d 282, 283, supra; Matter of Child Welfare Admin. [Jean L.] v Danielle R., 225 AD2d 692, supra; Matter of Caroline C., 206 AD2d 529, supra). Any other result would be tantamount to using a defenseless baby to test whether the preventive social services provided to the parent have succeeded in changing the parent's patterns of conduct.

While we are cognizant of the crucial developmental need for bonding between parents and newborn infants, protection from an established threat of harm must take precedence over Kimberly's need to bond with her mother. Furthermore, respondent is entitled to extended, albeit supervised, visitation with Kimberly, during which the bonding process can continue while respondent continues to receive intervention services, including the "more intensive" parenting classes respondent's caseworker recommended, until such time as the court can be satisfied that respondent presents no risk to her infant.

Respondent emphasizes the failure of ACS to investigate the current status of respondent's treatment and progress before it commenced this proceeding seeking Kimberly's removal from the home. Kimberly's Law Guardian, too, focuses on ACS's lack of preparation for the preliminary hearing, at which it initially lacked information and prior to which it did not conduct its own evaluation of respondent's condition.

However, in the context of this section 1028 hearing, the lack of a thorough investigation prior to proceeding with the petition does not alter the piece of irrefutable information known to ACS: less than two weeks before Kimberly's birth, the Family Court had concluded, following a fact-finding hearing, that Kimberly's siblings were at imminent risk of harm and should be removed from their home. Although the opinions of the professionals who had extensive contact with respondent since July—her therapist, her parenting skills teacher and her preventive-services worker from Alianza—as to whether it would be safe for Kimberly to remain with respondent would certainly be of interest to the fact finder, it would have been inexcusable for ACS to have accepted such assessments and ignore the factual determination recently made with respect to Kimberly's siblings.

Accordingly, the order of Family Court, New York County (Clark Richardson, J.), entered December 12, 1997, which, af-

ter a hearing held pursuant to Family Court Act § 1028, conditionally released the subject child to the custody of respondent mother Elizabeth H. pending a fact-finding hearing, should be reversed, on the law, the facts and in the exercise of discretion, without costs, and the subject child be remanded to the custody of the Commissioner of the petitioner agency pending a fact-finding hearing.

MILONAS, J. P., WILLIAMS, TOM and ANDRIAS, JJ., concur.

Order, Family Court, New York County, entered December 12, 1997, reversed, on the law, the facts, and in the exercise of discretion, without costs, and the subject child remanded to the custody of the Commissioner of the petitioner agency pending a fact-finding hearing.