[690 NYS2d 248]

In the Matter of UMER K., an Infant. HUMARANI A. et al., Respondents; COMMISSIONER OF ADMINISTRATION FOR CHILDREN'S SERVICES, Appellant.

First Department, May 20, 1999

---

### APPEARANCES OF COUNSEL

*Kenneth Rabb* of counsel (*Peter Hart* on the brief; *Monica Drinane, Legal Aid Society, Juvenile Rights Division, Law Guardian*), for infant.

*Alan E. Kudisch* for Humarani A., respondent.

*Dennis Houdek* for Naeem K., respondent.

*George Gutwirth* of counsel (*Francis F. Caputo* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellant.

### OPINION OF THE COURT

NARDELLI, J. P.

The first step toward rehabilitation is a sincere admission of the wrongdoing. The mother in this case killed one of her children. The Family Court decided on a trial discharge of Umer K. to the mother even though she refused to admit responsibility for the death of the other child. This action by the mother does not augur well for her future treatment of Umer K. and, accordingly, we reverse his discharge to the mother.

Respondent mother was arrested and charged with the second degree murder of her 18-month-old son, Zubair K., as a result of injuries sustained in December 1994. Zubair died as a result of head trauma. The mother admitted to police that she hit Zubair on the head and repeatedly banged his head against the wall, causing his fatal injuries. The child had old bruises and marks from prior injuries which were not explained. The autopsy concluded that the death was not accidental and that the injuries were caused by blunt impacts to the head. Ms. A. pleaded guilty to manslaughter in the second degree and was sentenced to time served and five years' probation. As a condition of that probation, respondent was to undergo intensive psychological counseling. The mother, instead of accepting responsibility for Zubair's death, gave as an excuse that the child fell in the bathtub while she was momentarily out of the room (which was inconsistent with the Medical Examiner's

report and her plea). Despite this failure by the mother to accept responsibility, the Family Court returned Zubair's brother, Umer, to the care of respondent parents. Since the mother has continued to deny the reality of the problem facing her, this disposition by the court was an abuse of discretion.

The Family Court directed unsupervised, weekday visits between the child, Umer K., and respondent and then directed a trial discharge of Umer if the weekend visits occurred without incident. We stayed those unsupervised visits until this appeal could be argued and decided.

Initially, the child protective proceeding was commenced in December 1994 by the filing of petitions against both respondents regarding their children, Zubair K. and Umer K. Petition as to Zubair abated when he died as a result of injuries noted above. The remaining petition alleged that Ms. A. and respondent father, Naeem K., had allowed the abuse of their children and that Ms. A. caused Zubair's death. After a hearing, the Family Court (Sara Schecter, J.) on June 29, 1995 entered a finding of abuse against Ms. A. and a neglect finding against Mr. K. "in that the child had old bruises and marks from prior injuries about which [Mr. K.] failed to make adequate inquiry although he did notice them." Thereafter, the court, on consent, placed Umer with the Commissioner of Social Services (CSS) for up to 12 months during which time he was to reside with his great-aunt. In addition, both parents were to complete parenting-skills training. Ms. A. was to participate in psychotherapy and Mr. K. was to have a psychiatric evaluation.

Thereafter, respondents, in August 1996, filed a petition for termination of placement alleging they were ready to be "good parents to the child." The Commissioner filed a petition requesting a 12-month extension of placement. After a hearing, the Family Court extended Umer K.'s foster care placement through September 10, 1998; directed unsupervised weekday visits between Umer and respondents beginning April 1, 1998, and unsupervised weekend visits beginning May 15, 1998; and, finally, directed a trial discharge of Umer on July 20, 1998, under CSS supervision, if the weekend visits occurred without incident. As noted, we stayed those visits.

We find that the court abused its discretion by ordering unsupervised visits between Umer and his parents, and by ordering Umer's trial release to their care and, accordingly, we reverse the order of the Family Court and remand the matter for a further hearing.

In order to obtain an extension of foster care placement, the Administration for Children's Services must establish by a

preponderance of the evidence, the continued inability of the parents to care for the child and that continued placement would be in the child's best interests (*see, Matter of Belinda B.*, 114 AD2d 70, 74). That burden was met by petitioner. Dr. Maureen Gallagher, a Mental Health Services psychologist, who interviewed Ms. A., testified that respondent remained in denial regarding the circumstances surrounding her son's death, and that such denial posed a significant risk of danger to Umer. First, respondent initially confessed that she had repeatedly hit Zubair in the head on the day that he suffered his fatal injuries. Second, respondent pleaded guilty to second degree manslaughter in Zubair's case. Third, neither parent gave an adequate explanation for the pre-death bruises found on Zubair. Fourth, the Family Court (per Judge Schecter) made a finding of abuse against the mother and derivative neglect against the father. Despite these compelling factors, the Family Court, in the order appealed from herein, accepted the testimony of Dr. Nels Langsten, the mother's therapist. While the findings of the Family Court are entitled to considerable deference (*see, Matter of Justin H.*, 215 AD2d 180, *lv denied* 86 NY2d 709), the evidence overwhelmingly supported Dr. Gallagher's conclusions and thus it was unreasonable of the Family Court to reject her testimony in favor of Dr. Langsten's (*see, Rentschler v Rentschler*, 204 AD2d 60, *lv dismissed* 84 NY2d 1027). Dr. Langsten's first recommendation that Umer be returned to his parents came a mere four months after she started treatment with him. Dr. Langsten said that the Medical Examiner's conclusion that the cause of Zubair's death was "blunt impacts [plural] to the head" could have been a "typo." He further stated that the other bruises on Zubair's body could have been caused by resuscitation efforts. While he testified that the Medical Examiner's office is busy and perhaps did not give the case enough attention, he admitted that he did *not* contact that office to discuss the autopsy report.

Family Court Act § 1046 (a) (i) provides, in relevant part, that "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of * * * the respondent." Thus, New York incorporated into its rules of evidence the theory that "when there is a finding that one child is abused * * * experience shows that there is a substantial risk of future abuse to the other children" (*Matter of James P.*, 137 AD2d 461, 464). Thus, in that case, this Court made a finding of derivative abuse based upon expert testimony establishing that James's younger brother

died as a result of immersion in scalding water, contradicting the mother's account. We concluded in remanding for a new dispositional hearing that the child "should be placed in a safer environment for a sufficient period until such time as respondent exhibits better judgment and parenting skills" (*supra,* at 464). It is clear that " '[e]vidence of the physical abuse of one child logically supports the conclusion that the parents have a faulty understanding of the duties of parenthood' sufficient to infer an ongoing danger to their other children" (*Matter of Tiffany F.,* 205 AD2d 429, 431).

However, as noted, Ms. A. failed to accept responsibility for Zubair's death, supporting the conclusion that she had a " 'faulty understanding of the duties of parenthood' *sufficient to infer an ongoing danger*" to Umer (*supra,* at 431; emphasis added). This fact strongly militates against returning Umer to her custody. We have previously noted that, despite an otherwise good relationship between a mother and child, a mother's "inability to acknowledge her previous behavior [injuring the child], and thus to correct it, warranted the court's extension of foster care" (*Matter of Tanya M.,* 207 AD2d 656).

While the Family Court noted that respondents took ultimate responsibility for the death of Zubair, this determination lacks support in the record. Thus, Ms. A. stated her mistake was leaving Zubair alone in the tub while she briefly went to the kitchen to get shampoo. Mr. K. had a lack of knowledge regarding the events of that day. Thus, in effect, Ms. A. simply admitted that her child died while in her care. That is *not* the same as acknowledging that the baby died as a result of abuse and neglect.

Both the finding of abuse and the guilty plea of Ms. A. to manslaughter in the second degree are evidence of a substantial threat of harm to Umer. As we recently found in reversing the conditional release of an infant pending a fact-finding hearing, "protection from an established threat of harm must take precedence over [the child's] need to bond with her mother" (*Matter of Kimberly H.,* 242 AD2d 35, 40). In addition, while Ms. A. has properly undergone therapy and participated in parenting programs, "such participation * * * does not by itself establish that a person with a history of abuse or neglect of her children has successfully overcome her prior inclinations and behavior patterns, despite what may be the best of intentions" (*supra,* at 39).

Accordingly, in light of the strong recommendation by Dr. Gallagher that respondents undergo more therapy and counsel-

ing before being granted unsupervised visitation, the uncertainty surrounding the death of Umer's brother and the fact that supervised visitation may continue in the interim, we reverse the order of the Family Court and remand for further proceedings.

The order of the Family Court, New York County (Gloria Sosa-Lintner, J.), entered on or about March 25, 1998, which (1) extended Umer K.'s foster care placement through September 10, 1998; (2) directed unsupervised weekday visits between Umer and respondents beginning April 1, 1998, and unsupervised weekend visits beginning May 15, 1998; and (3) directed a trial discharge of Umer on July 20, 1998, under supervision, if the weekend visits occurred without incident, should be reversed, on the law, without costs, to the extent that the order allows any form of unsupervised visitation, and the matter remanded for further hearings to set an appropriate placement and therapy schedule.

WALLACH, TOM and ANDRIAS, JJ., concur.

Order, Family Court, New York County, entered on or about March 25, 1998, reversed, on the law, without costs, to the extent that the order allows any form of unsupervised visitation, and the matter remanded for further hearings to set an appropriate placement and therapy schedule.