ROBERTS, J.,
for the Court:
¶1. W.G. and M.G. (the Appellants) claim the Hinds County Youth Court erred when it adjudicated their nine-year-old granddaughter, L.H., to be an abused child in that two of L.H.’s relatives touched her inappropriately while L.H. was visiting the Appellants.[1] According to the Appellants, the youth court did not have jurisdiction to adjudicate L.H. an abused child. The Appellants further argue that the youth court failed to give them adequate notice of the adjudicatory hearing that led to the youth court’s decision. Finally, the Appellants claim there was insufficient evidence to support the youth court’s decision. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 2008, L.H.’s mother died in a traffic accident. For approximately five months, the Appellants, L.H.’s maternal grandparents, had temporary custody of L.H. In May 2009, L.H.’s father took custody of her, and the Appellants received visitation. The record indicates that L.H. visited with the Appellants at their home on June 18, 2009. According to the Appellants, from August 2009 to June 2010, L.H. lived with her paternal grandparents in Japan.
¶ 3. The Appellants filed a motion for contempt against L.H.’s father.[2] After hearing the Appellants’ motion for contempt, the Hinds County Chancery Court entered an order on June 28, 2010. The chancellor ordered that L.H.’s father would maintain primary custody of L.H. The chancellor further ordered that the Appellants would be granted visitation with L.H. for one week beginning on June 29, 2010.
¶ 4. On the day that L.H. was to begin her visitation with the Appellants, the Hinds County Department of Human Services (DHS) received a report that two of L.H.’s cousins had touched L.H. inappropriately at the Appellants home on March *1141 13, 2009, and June 13, 2009.[3] We emphasize that the Appellants have never been accused of inappropriately touching L.H.
¶ 5. On July 7, 2010, the Hinds County Youth Court Intake Unit recommended that the Hinds County youth court prosecutor file a petition alleging that L.H. was a sexually abused child. The youth court appointed an attorney guardian ad litem and an investigative guardian ad litem to represent L.H.’s best interests.
¶ 6. The next day, the Mississippi Children’s Advocacy Center (CAC) conducted a forensic interview of L.H. Andreal Harper, a DHS social worker, observed that interview. Subsequently, the youth court issued the first of three shelter orders. The first shelter order placed L.H. in DHS custody. On July 9, 2010, the youth court issued a second shelter order returning L.H. to her father’s custody. Approximately one month later, the youth court issued its third shelter order and placed L.H. in the custody of her paternal grandparents so she could return to school.
¶ 7. During October 2010, the Appellants’ attorney filed an entry of appearance on the Appellants’ behalf. On February 22, 2011, the youth court conducted an adjudicatory hearing on the youth court prosecutor’s petition. That same morning, the Appellants filed a motion to dismiss. Although the Appellants did not attend the adjudicatory hearing, their attorney was present and raised their motion to dismiss. Within their motion, the Appellants argued that the chancery court, not the youth court, had jurisdiction over L.H. Additionally, the Appellants argued that the youth court failed to provide them with proper notice of the adjudicatory hearing. After addressing the Appellants’ motion to dismiss, the youth court judge held that the adjudicatory hearing would proceed.
¶ 8. The prosecutor called one witness— Harper, the DHS social worker who had been assigned to L.H.’s case. After testifying regarding her investigation and the reports she had reviewed to reach her conclusion, Harper recommended that the youth court adjudicate L.H. a sexually abused child. The attorney guardian ad litem also questioned Harper. Additionally, the Appellants’ attorney cross-examined Harper. Ultimately, the youth court found that L.H. qualified as a sexually abused child. The youth court held that L.H.’s father would retain custody of L.H., and a previous no-contact order against L.H.’s cousins was to remain in effect. The Appellants claim this Court should reverse the youth court’s adjudication.
ANALYSIS
I. SUBJECT-MATTER JURISDICTION
¶ 9. The Appellants claim the youth court’s decision should be vacated and “transferred” to the chancery court because the youth court had no jurisdiction over L.H. According to the Appellants, the chancery court had continuing jurisdiction over L.H., by virtue of the custody proceedings involving L.H., under Mississippi Code Annotated section 43 — 21—151(l)(c) (Rev.2004). “Jurisdiction is a question of law.” E.J.M. v. 846 So.2d 289, 292 (¶ 7) (Miss.Ct.App.2003) (citation omitted). “This Court reviews questions of law de novo.” Id. (citations omitted).
¶ 10. Section 43-21-151(l)(c) provides:
The youth court shall have exclusive original jurisdiction in all proceedings *1142 concerning a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child except ... [w]hen a charge of abuse of a child first arises in the course of a custody-action between the parents of the child already pending in the chancery court and no notice of such abuse was provided prior to such chancery proceedings. ...
A “charge of abuse” did not “first arise” during the course of a pending chancery court custody action between L.H.’s parents because there was not a pending custody action between L.H.’s parents. The youth court did not err by exercising subject-matter jurisdiction over the charge that L.H. had been sexually abused by her cousins while she was visiting the Appellants. We find no merit to this issue.
II. PERSONAL JURISDICTION AND NOTICE
¶ 11. Next, the Appellants claim the youth court failed to give the Appellants notice of the adjudicatory hearing as required by Mississippi Code Annotated section 43-21-501(l)(b) (Rev.2004). They further claim they were entitled to notice because they had custody and care of L.H. under the chancery court’s prior visitation order.
¶ 12. Section 43 — 21—501(l)(b) provides:
When a petition has been filed and the date of hearing has been set by the youth court, the judge or his designee shall order the clerk of the youth court to issue a summons to the following to appear personally at such hearing:
[[Image here]]
(b) the person or persons who have custody or control of the child....
The Appellants argue that the youth court should have issued a summons ordering them to appear at the adjudicatory hearing because they had “custody or control” of L.H. in that L.H. was visiting with them pursuant to the chancellor’s award of visitation. The Mississippi Legislature has defined “custody” in the context of the underlying circumstances. “ ‘Custody’ means the physical possession of the child by any person.” Miss.Code Ann. § 43-21-105(q) (Rev.2004).
¶ 13. The record is somewhat ambiguous regarding the filing date of the petition to adjudicate L.H. an abused child. That is, the record contains an unsigned petition with a statement indicating that it was “submitted” on July 7, 2010. That petition does not bear a stamp reflecting that it was ever filed. That the July 7, 2010, petition appears in the record might indicate that it was filed, but we cannot determine with certainty that it was filed.
¶ 14. The record also contains an amended petition. It has a file stamp reflecting that it was filed on July 9, 2010. Although the amended petition states that it was submitted by the Hinds County prosecutor, the amended petition does not bear the prosecutor’s signature. Instead, the youth court judge signed the amended petition electronically.
¶ 15. If we construe the record to reflect that the petition was filed on July 7, 2010, then the Appellants would be entitled to notice pursuant to section 43-21-501(l)(b). According to Harper, after DHS received the report that L.H. had been touched inappropriately, Harper twice went to the Appellants’ home to see L.H. Both times, Harper was told that L.H. was not there. Despite her request that the Appellants contact her once L.H. returned to their home, the Appellants did not contact Harper. Harper testified that she “went out there to get” L.H. on July 8, 2010, when the “maternal grandparent told [Harper] that she wanted to speak to the *1143 paternal grandmother.” Accordingly, it is reasonable to conclude that the Appellants had physical possession of L.H. on July 7, 2010, in that L.H. was visiting the Appellants at their home. Under that scenario, the Appellants would have had “custody” of L.H. within the strict meaning of section 43 — 21—105(q).
¶ 16. However, if we construe the record to reflect that the petition was filed on July 9, 2010, then the Appellants would not be entitled to section 43 — 21—501(l)(b) notice because the Appellants did not have “physical possession” of L.H. when the amended petition was filed. Pursuant to the July 8, 2010, shelter order, the youth court had placed L.H. in DHS custody on that day. The next day, the youth court issued a second shelter order placing L.H. back in her father’s custody.
¶ 17. For the sake of discussion, Mississippi Code Annotated section 43-21-505 (Rev.2004) governs service of a summons under these circumstances. It provides:
(1) Unless otherwise provided in this chapter, service of summons shall be made personally by delivery of a copy of the summons with a copy of the petition in a sealed envelope attached to the summons. A child may be served in the same manner as an adult.
[[Image here]]
(5) Unless otherwise provided in this chapter, notice of the time, date, place and purpose of any hearing other than adjudicatory and transfer hearings shall be given to all parties in person in court or by mail, or in any other manner as the youth court may direct.
The record does not indicate that the Appellants received a summons in the manner contemplated by section 43-21-505(1). Nor does the record indicate that the Appellants received a summons that met the requirements of section 43-21-505(5). Even if we assume that the unsigned July 7, 2010, petition was actually filed — causing the Appellants to be entitled to notice because they had physical possession of L.H. at that time — that does not end the analysis under the circumstances of this case.
¶ 18. The Appellants’ attorney appeared at the youth court’s adjudicatory hearing. The Appellants’ attorney had filed an entry of appearance approximately five months before the hearing. “Mississippi does not recognize ‘special appearances’ except where a party appears solely to object to the court’s jurisdiction over her person on grounds that she is not amenable to process.” Isom v. Jernigan, 840 So.2d 104, 107 (¶9) (Miss.2003) (citation omitted). Upon making a general appearance, one waives service of process. Id. (citations omitted). In Isom, a mother had sent her attorney to appear at a contempt hearing initiated by a father. Id. at 105 (¶ 5). During the hearing, the mother’s attorney introduced evidence on the mother’s behalf. Id. at 107 (¶ 9). On appeal, the mother argued that the chancery court erred when it failed to provide her adequate notice of the hearing. Id. at 106 (¶ 8). The supreme court held that because the mother’s attorney had appeared at the hearing and participated in the proceedings by presenting evidence on the mother’s behalf, the mother had “subjected herself to the jurisdiction of the chancery court and waived all objections to improper or insufficient service of process.” Id. at 107 (¶ 9).
¶ 19. In this case as in Isom, the Appellants’ attorney appeared at the adjudicatory hearing. The record indicates that on October 15, 2010, the youth court issued a summons to the Appellants’ attorney commanding her to appear at the February 22, 2011, adjudicatory hearing. During the adjudicatory hearing, the Appellants’ attorney cross-examined Harper regarding *1144 Harper’s investigation. The Appellants’ attorney noted discrepancies in the dates of the incidents. The Appellants’ attorney also implied that Harper’s investigation was deficient in that Harper had not examined the Appellants’ home. Additionally, the Appellants’ attorney cross-examined Harper regarding the fact that Harper had not asked the Appellants whether L.H. was receiving medical or mental health treatment. The Appellants’ attorney also asked Harper whether she had examined L.H.’s father’s home.
¶ 20. As in Isom, we find that because the Appellants’ attorney appeared at the hearing and participated in the proceedings beyond asserting insufficient notice and service of process, the Appellants subjected themselves to the youth court’s jurisdiction. Furthermore, the Appellants’ attorney executed and filed a general entry of appearance on the Appellants’ behalf approximately five months before the February 2011 adjudicatory hearing. Therefore, we find that the Appellants waived their objection to improper service of process. It follows that we find no merit to this issue.
III. SUFFICIENCY OF EVIDENCE
¶ 21. Finally, the Appellants argue that the youth court’s decision was not supported by sufficient evidence. The Appellants claim that the petition to adjudicate L.H. an abused child alleged several time periods that were not verified. The Appellants further claim that Harper’s investigation was inadequate.
¶ 22. The youth court judge is the trier of fact. In re D.K.L., 652 So.2d 184, 188 (Miss.1995) (citations omitted). This Court’s standard of review of a youth court cases is limited. In re A.J.M., 911 So.2d 576, 579 (1110) (Miss.Ct.App.2005). “If the evidence ... considered is opposed to the finding of the youth court with such force that reasonable men could not have found as the youth court did by a preponderance of the evidence, this Court must reverse.” Id. (citing Collins v. Lowndes County Pub. Welfare Dep’t, 555 So.2d 71, 72 (Miss.1989)). “However, if there is substantial evidence in the record supporting the adjudication of the youth court, evidence of such quality and weight that, even under the ‘beyond a reasonable doubt’ standard, the youth court might reasonably have ruled as it did, we must affirm.” Id. (citing In re M.R.L., 488 So.2d 788, 790-91 (Miss.1986)).
¶ 23. “ ‘Sexual abuse’ means ... the ... molestation ... of children under circumstances which indicate that the child’s health or welfare is harmed or threatened.” Miss.Code Ann. § 43-21-105(n) (Rev.2004). Harper testified regarding her own report, the CAC’s report, and the investigative guardian ad litem’s report. Those reports were admitted into evidence. The investigative guardian ad litem recommended that the youth court find L.H. to be a sexually abused child. The CAC’s report concluded that L.H.’s version of events was credible. Harper observed the CAC’s forensic interview of L.H. According to Harper, L.H. stated during that interview:
[Wjhen she was eight years old, she was at [the Appellants’] home ... [when] her cousin ... came and touched her ‘private’ with his hand. She stated “he reached in my clothes and touched me.” She stated that ... she told her [maternal] grandmother that [her cousin] touched her “private” and her [maternal] grandmother said, “just pretend you don’t feel it.”
During the CAC interview, L.H. also stated that a different cousin had touched her “bottom.” When the attorney guardian ad litem cross-examined Harper, she drew at *1145 tention to the portion of the CAC interview in which L.H. had stated that her cousin “reached in [L.H.’s] clothes and touched [her].” L.H. claimed she had told him to stop. During cross-examination, the Appellants’ attorney noted that L.H. had reported that one of her cousins had “put something in her bottom that stinged [sic] really bad.” Additionally, the attorney guardian ad litem agreed with the prosecutor’s request that the youth court find L.H. to be a sexually abused child.
¶ 24. Considering the foregoing, we find that there is substantial evidence in the record to support the youth court’s adjudication that, based on a preponderance of the evidence, L.H. qualified as a sexually abused child. Because there is substantial evidence in the record supporting the youth court’s adjudication, we affirm the judgment of the youth court. It follows that we find no merit to this issue.
¶ 25. THE JUDGMENT OF THE HINDS COUNTY YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. We use initials to protect the identity of the minor child.

. The Appellants’ motion for contempt is not part of the record.

. L.H. was seven years old during the first incident and eight years old during the second incident.