**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2015-CA-01621-COA**

**IN THE INTEREST OF N.M., A MINOR:**                **APPELLANTS**
**S.M. AND M.M.**

**v.**

**MISSISSIPPI DEPARTMENT OF HUMAN**             **APPELLEE**
**SERVICES, MARION COUNTY, MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2015 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| COURT FROM WHICH APPEALED: | MARION COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANTS: | PAMELA L. NELSON |
| ATTORNEYS FOR APPELLEE: | MARION EARL SCALES |
| | SCOTT PHILLIPS |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | DENIED APPELLANTS' MOTION TO SET ASIDE JUDGMENT AND RETURN CHILD TO THE CUSTODY OF THE PARENTS |
| DISPOSITION: | REVERSED AND REMANDED - 04/11/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND WILSON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. On September 29, 2014, M.M. gave birth to a child, N.M.[1] The child's father is M.M.'s husband, S.M.[2] N.M. is the youngest of the couple's eight children. A month prior to her birth, N.M.'s seven siblings had been adjudicated as "neglected children" and placed

---

[1] To protect the minor's confidentiality, initials are used in place of the child's and the parents' names.

[2] The parents, M.M. and S.M., will be collectively referred to as "the appellants."

into three foster homes under the custody of the Mississippi Department of Human Services (DHS) in Marion County, Mississippi.

¶2.     The DHS conducted a shelter hearing for N.M. on October 1, 2014, in Marion County Youth Court.  At the hearing, the DHS attorney, Scott Phillips, noted the shelter hearing was made out of an "abundance of caution to provide care for this child pending the outcome of the service plan being met by the [parents] and the[ir] meeting all of the requirements of the DHS."  The guardian ad litem, Renee Porter, noted that the other children were all in DHS custody due to neglect (based on a finding of unsafe living conditions) and stated that the youth court judge had instructed the DHS to "notify" the court when N.M. was born "and that we would deal with that immediately."  Porter expressed "concern for this child to be placed in the home of the parents."  Although noting the goal was to reunite the family "as fast as possible," the youth court judge, Jim Rhoden, removed N.M. from her parents' custody and placed the child in DHS custody, specifically with Leigh Berry, a youth court officer.  The appellants were granted visitation with the child under Berry's supervision.

¶3.     In the shelter order, the youth court determined that "[N.M.] is less than one month old, [and] has been alleged to be a Child in Need of Special Care as defined by [section] 43-21-105(o) of the Mississippi Code of 1972, Annotated[.]"  This subsection of the statute provides:  "'A child in need of special care' means a child with any mental or physical illness that cannot be treated with the dispositional alternatives ordinarily available to the youth court."  Miss. Code Ann. § 43-21-105(o) (Rev. 2015).  The shelter order further stated:

> [T]he effect of the continuation of [N.M.'s] residence within his/her own home would be contrary to the welfare of [N.M.,] and . . . the placement of [N.M.]

2

with Marion County DHS is in the best interest of [N.M.]; and . . . the circumstances are of such an emergency nature that no reasonable efforts have been made to maintain [N.M.] within his/her own home and there is no alternative to custody[.[3]]

DHS filed a petition on October 10, 2014, alleging that N.M. "is a Child in Need of Special Care within the purview of the Mississippi Youth Court Act[.]"

¶4. At the adjudication hearing on October 17, the DHS family protection worker, Sue Watts, testified that "due to aggravated circumstances of neglect, because of the past history of the parent[']s unchanged neglectful behavior, which included unsafe living conditions," the DHS was requesting that N.M. be adjudicated as a child in need of special care. Judge Rhoden adjudged that N.M. was "a child in need of special care," as alleged in the DHS petition. Both parents attended the hearing and did not contest the adjudication at that time.

¶5. On May 27, 2015, a permanency hearing was held before a newly appointed judge.[4] The appellants, now represented by legal counsel, moved to set aside the judgment related to N.M. under Mississippi Rule of Civil Procedure 60(b)(4) and requested that N.M. be returned to their custody. The motion argued that the youth court did not have personal or subject-matter jurisdiction over N.M., as she was not a child in need of special care as

_____

[3] This language is taken from Mississippi Code Annotated section 43-21-603(7)(a)(ii) & (b) (Rev. 2009), which addresses the disposition order requirements for a child who "has been adjudicated abused or neglected[.]"

[4] On March 5, 2015, Judge Rhoden recused himself due to a conflict of interest. Because N.M.'s foster parent was a practicing attorney, an order was entered on March 27, 2015, recusing all chancellors from the Tenth Judicial District, and the Mississippi Supreme Court appointed a special youth court judge to hear the case. There are references to other hearings regarding the status of the cases between October 2014 and May 2015, but the transcripts from those hearings are not contained in the record.

3

defined by the statute and as DHS failed to set forth any facts to support its allegation. Therefore, the appellants claimed the youth court's orders were void. Counsel for the State acknowledged that N.M. has no mental or physical illness, as did the social worker, Watts. But the State's attorney noted the horrible living conditions (i.e., "maggots" and only one "moldy and nasty" bed) that had warranted removal of the other seven siblings back in August 2014. The new guardian ad litem, James Johnson, objected that the motion was untimely, being filed nine months after the court's ruling.

¶6. The judge did not rule on the motion to set aside the order adjudicating N.M. as a child in need of special care, deferring his ruling until such time as the transcripts from the prior hearings could be reviewed, and he granted a motion to continue the permanency hearing until July 17, 2015, due to the DHS's failure to obtain information regarding S.M.'s drug tests and because the parents had not complied with the service agreement.[5] On July 17, 2015, the judge granted a second continuance; however, the order was not filed until October 16, 2015, when the youth court judge summarily denied the appellants' motion to set aside the judgment, without making any specific findings.

¶7. An appeal of the youth court's denial of the motion was filed on October 26, 2015, reasserting the claim that the youth court did not have jurisdiction over N.M. We find merit to the appellants' claim there was no evidence N.M. met the definition of a "child in need of special care" and find that the DHS petition, alleging that N.M. was a child in need of special

---

[5] Although Watts was of the opinion that the children should be allowed to return home, she acknowledged that in January 2015, S.M. had been admitted to the hospital and his drug screen showed "opiates and Suboxone."

4

care, did not state a basis for invoking youth court jurisdiction over N.M. However, as there have been ongoing proceedings concerning N.M. and her siblings in youth court since the filing of this appeal that indicate N.M. may indeed have become a neglected child, we reverse the judgment denying the appellants' motion to set aside the judgment and remand to allow DHS to file the proper petition in this regard, should it choose to do so.

## STANDARD OF REVIEW

¶8.     On appeal from a youth court's adjudication hearing, we employ a limited standard of review. *In re E.G.*, 191 So. 3d 763, 768 (¶14) (Miss. Ct. App. 2016) (citing *In re L.H.,* 87 So. 3d 1139, 1144 (¶22) (Miss. Ct. App. 2012)). "The youth court judge is the trier of fact, and we will reverse [his] findings only if the evidence is opposed to the findings with such force that reasonable men could not have found as the youth court did by a preponderance of the evidence." *Id.* "We review a youth court's finding of neglect or abuse in the light most favorable to the State." *Id.*

## DISCUSSION

¶9.     The appellants argue that the youth court erred in denying their Rule 60(b) motion to "set aside the underlying order adjudicating N.M. as a child in need of special care. . . based on lack of subject[-]matter jurisdiction." Under Rule 60(b)(4), a court may relieve a party from a "final judgment, order, or proceeding" when "the judgment is void."[6] Although DHS

---

[6] In determining whether a judgment is void, the Mississippi Supreme Court has reiterated the federal rule, "which states that 'a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Ravenstein v. Ravenstein*, 167 So. 3d 210, 217 (¶12) (Miss. 2014) (quoting *Overbey v. Murray,* 569 So. 2d 303, 306 (Miss. 1990)).

argues the appellants' motion was untimely, there is no specific time limit on filing a Rule 60(b)(4) motion; the rule simply provides that a motion alleging that a judgment is void "shall be made within a reasonable time." M.R.C.P. 60(b). "What constitutes a reasonable time period is determined on a case-by-case basis." *Indymac Bank F.S.B. v. Young*, 966 So. 2d 1286, 1290 (¶13) (Miss. Ct. App. 2007) (citing *Jenkins v. Jenkins,* 757 So. 2d 339, 344 (¶11) (Miss. Ct. App. 2000)). In *Ravenstein v. Ravenstein*, 167 So. 3d 210, 216-17 (¶12) (Miss. 2014), however, the Mississippi Supreme Court recognized that "there is no effective time limit for seeking relief from a void judgment under Rule 60(b)(4), as 'no amount of time or delay may cure a void judgment.'" (Quoting *Overbey v. Murray,* 569 So. 2d 303, 306 (Miss. 1990)). *See also Adams v. Miss. State Oil & Gas Bd.*, 80 So. 3d 869, 873 (¶18) (Miss. Ct. App. 2012) (holding that since the order of dismissal was void, a "nine-month delay in requesting the appeal be reinstated was not untimely because 'no amount of time or delay may cure a void judgment'" (quoting *Overbey,* 569 So. 2d at 306)). Therefore, we address the appellants' appeal on the merits.

¶10. "The youth court is a court of statutory and limited jurisdiction, and the facts vesting jurisdiction should be shown affirmatively." *Griffin v. Bell*, 215 So. 2d 573, 575 (Miss. 1968). Mississippi Code Annotated section 43-21-151(1) (Rev. 2015) provides that, except in specific enumerated cases: "The youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child[.]"

¶11. As DHS acknowledges on appeal, Mississippi law does "not specifically provid[e]

that the youth court is the court of exclusive original jurisdiction for children in need of special care."[7] Mississippi Code Annotated section 43-21-455(1)(c) (Rev. 2015) states that a petition filed in youth court must set forth with particularity "a statement of the facts, including the facts which bring the child within the jurisdiction of the youth court and which show the child is a delinquent child, a child in need of supervision, a neglected child or an abused child[.]" The DHS petition only stated that N.M. was a "child in need of special care," although there was no specific allegation by DHS that N.M. had any mental or physical illness.

¶12.    A comprehensive reading of the "Youth Court Law"[8] indicates that a youth court's finding that a child is in need of special care is not a basis, in and of itself, for bringing a child within the jurisdiction of the youth court. The youth court must first find that the child is either "a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child." Miss. Code Ann. § 43-21-151(1). Mississippi Code Annotated section 43-21-611 (Rev. 2015) states:

>   If the youth court finds at the disposition hearing that a delinquent child, a

---

[7] This Court could find only one other jurisdiction that uses the phrase "child in need of special care." Title 10A, section 1-1-105(20)(e) of the Oklahoma Statutes Annotated uses this terminology as one of the definitions of a "deprived child," stating in pertinent part: "'Deprived child' means a child . . . in need of special care and treatment because of the child's physical or mental condition, and the child's parents, legal guardian, or other custodian is unable or willfully fails to provide such special care and treatment." *See* Okla. Stat. Ann. tit. 10A, § 1-4-101(A)(1) ("Upon the filing of a petition, the assumption of the custody of a child, or issuance of an emergency custody order pursuant to the provisions of the Oklahoma Children's Code, the district court shall obtain jurisdiction over any child who is or is alleged to be deprived.").

[8] *See* Miss. Code Ann. § 43-21-101 et. seq. (Rev. 2015).

7

child in need of supervision, a neglected child, an abused child or a dependent child *is also* a child in need of special care, the youth court may, in its discretion, make any appropriate *additional* disposition designed for the treatment of the disability or infirmity, which may include civil commitment to a state institution providing care for that disability or infirmity.

(Emphasis added). The Mississippi Attorney General's office has interpreted this statute in this manner, finding that "the youth court would have original jurisdiction over [the] commitment of a mentally ill juvenile only where that juvenile is already in youth court jurisdiction as abused, neglected, delinquent, in need of supervision or dependent." *See* Miss. Att'y Gen. Op., 96-0148, 1996 WL 153903, *Floyd* (Mar. 29, 1996).

¶13. Accordingly, we find the DHS petition did not state a basis for invoking youth court jurisdiction over N.M. At the shelter hearing, the youth court judge placed N.M. in DHS custody, reasoning: "The problem I have is we have seven children in custody, and I feel that we have to – we can[no]t place the eighth one with the family with the other seven being in the custody of [the DHS]. Not immediately." At the adjudication and dispositional hearings on October 17, DHS presented to the youth court "aggravated circumstances of neglect" of the other children, such as "unsanitary living conditions," and its concern that N.M. would be subjected to that environment. The DHS did not present any evidence that N.M. was a child in need of special care (i.e., any physical or mental illness). There was also no evidence that the parents had met any terms of their service agreement at the time of the adjudication hearing; nor did the parents assert any argument to the contrary, except to claim later, on appeal, that they had moved residences. Thus, it is apparent that the youth court based its decision to place N.M. in DHS custody as a child in need of special care upon evidence of

neglect of the other children.

¶14. We find no Mississippi case addressing whether the youth court may exercise jurisdiction over a newborn on the basis that its siblings have been recently adjudicated as "neglected," but a few jurisdictions have determined that a court may have jurisdiction over a newborn under a theory of "anticipatory neglect," when another related child has been found to be neglected. In a recent case, *In re Aniylah B.*, 61 N.E.3d 216, 225 (¶¶43-44) (Ill. App. Ct. 2016), the Appellate Court of Illinois observed:

> Under the anticipatory neglect theory, the State seeks to protect not only children who are the direct victims of neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child. . . . Under the theory of anticipatory neglect, where there is evidence of prior neglect by the parents, the trial court should not be deterred from acting until another child is injured.

(Internal citations and quotation marks omitted). "A child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child. Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *In re Gazella*, 692 N.W.2d 708, 716 (Mich. Ct. App. 2005) (superseded by Mich. Comp. Laws § 712A.19b(5) (2012) on other grounds as stated in *In re Hansen*, 774 N.W.2d 698 (Mich. Ct. App. 2009)); *see also In re Robertson*, No. 322301, 2015 WL 1740241, at *2 (Mich. Ct. App. Apr. 16, 2015) (holding that the trial court could assume jurisdiction over a newborn "on the basis of anticipatory neglect," due to the respondent's neglect of an older sibling, "without violating respondent's due process rights because her treatment of [the sibling] supported the conclusion that [respondent] would be

9

unable to provide proper care and a fit home for [the newborn]"). New York courts uniquely employ the term "derivative neglect" in such a scenario where the child is born shortly after an adjudication of neglect of another child/sibling.

> While the petitioner agency has the burden of proving that the return of the child to the parent presents an imminent risk to the child's life or health, proof of the abuse or neglect of one child is admissible evidence on the issue of abuse or neglect of a sibling, and in appropriate cases it can be sufficient alone to sustain a finding of abuse or neglect. Furthermore, where a prior finding of abuse or neglect as to one child is so proximate in time to the derivative proceeding that it can reasonably be concluded that the condition still exists, the condition is *presumed* to exist currently and the respondent has the burden of proving that the conduct or condition cannot reasonably be expected to exist currently or in the foreseeable future.

*In re Kimberly H.*, 242 A.D.2d 35, 38 (N.Y. App. Div. 1998) (internal citations and quotation marks omitted); *see also In re Essence S.*, 134 A.D.3d 415, 416 (N.Y. App. Div. 2015) (concluding that the "finding of derivative neglect as to [the newborn child] was also proper because the child was born so close in time to the period in which conditions underlying the mother's longstanding history of neglect existed that [the child] would have been a neglected child if placed in the mother's care").

¶15.   Our supreme court has addressed a similar issue – that of a sibling adjudicated as "abused." In *E.S. v. State*, 567 So. 2d 848, 849-51 (Miss. 1990), the Mississippi Supreme Court affirmed the youth court's finding that siblings of a child who had been sexually abused by her father were also "neglected and abused children within the meaning of the Youth Court Act." "[T]he harm to a sibling, [the] potential harm done to another child, is sufficient to justify intervention of the court to remove the sibling from the harmful environment." *Id.* at 850 (quoting *In re A.K.S.*, 602 S.W.2d 848, 851 (Mo. Ct. App. 1980));

10

*see also S.C. v. State*, 795 So. 2d 526, 532 (¶28) (Miss. 2001) (finding that youth court's decision to adjudicate child as neglected was based on substantial evidence as the child's sibling was abused); *T.T. v. Harrison Cty. Dep't of Human Servs.*, 90 So. 3d 1283, 1287 (¶20) (Miss. Ct. App. 2012) (concluding that because there was sufficient evidence that a child's siblings had been abused by a parent, the potential harm to the child warranted removal from the home). Therefore, we believe that in a case involving evidence of neglect of a sibling, the supreme court would adopt the doctrine of "anticipatory" or "potential" neglect, especially where the neglect of a sibling had been determined a mere month prior to the other child's birth. Moreover, we find our Youth Court Act's definition of a "neglected child" is sufficiently comprehensive to include a newborn child whose parents have previously demonstrated that they are unwilling or unable to provide proper care for the child. The definition includes, inter alia, any child [w]ho is . . . without proper care, custody, supervision or support" or "[w]ho, for any reason, lacks the care necessary for his health, morals or well-being." Miss. Code Ann. § 43-21-105(l)(ii) & (iv).

¶16. However, because the DHS petition failed to charge that N.M. was a neglected child, we must find the youth court exceeded its authority and jurisdiction in the present case. In *In re M.R.L.*, 488 So. 2d 788, 792-93 (Miss. 1986), the supreme court determined that the youth court's adjudication that three children were "neglected" "exceeded its authority," as the petitions only charged "that each [was] a child in need of supervision." There, the court stated:

> While concededly there is evidence that would support a finding of neglect, regularity in judicial proceedings forbids the Youth Court making such a

11

> determination in this . . . case in which the record fails to suggest that anyone even considered the neglected child issue until all of the proceedings at the adjudicatory hearing had been concluded and the Youth Court was announcing its decision.

*Id.* (finding the youth court "exceeded its authority in finding the children neglected children, given the present petition and record"). Similar to the circumstances before us, the *M.R.L.* court noted that the finding of neglect by the youth court was likely due to the fact that "a bit of straining" was necessary "to bring the case within 'child in need of supervision,'" and the youth court "recognized that something had to be done for these children." *Id.* at 793.[9] Accordingly, pursuant to the Youth Court Act and the supreme court's holding in *In re M.R.L.*, we find the DHS petition was insufficient to bring N.M. under the youth court's jurisdiction, and the youth court erred in denying the appellants' Rule 60(b)(4) motion.

¶17.    In their brief, however, the appellants have made this Court aware of subsequent legal proceedings involving this child in youth court. We take judicial notice of a DHS appeal to the Mississippi Supreme Court of the Marion County Youth Court's February 16, 2016 order involving N.M. and her siblings, which held that DHS was to file a petition "seeking the termination of the parental rights of the [appellants]." *See In re M.M.*, 2016-TS-00290-SCT. DHS later requested a voluntary dismissal of the appeal, as the "minor children . . . have again been removed from the home of their parents since th[e] appeal was filed due to the conditions of the home," and the supreme court granted the motion to dismiss on July 11, 2016. Therefore, even if there were no basis for a finding of neglect of the newborn, N.M.

---

[9] We note the supreme court did find that the evidence supported a finding that the children were "in need of supervision." *In re. M.R.L.*, 488 So. 2d at 792.

12

may be considered a "neglected" child based on subsequent events or conditions in the home.

¶18.   The youth court's judgment, denying the appellants' Rule 60(b)(4) motion, is reversed, and this case is remanded to allow the DHS to file a proper petition within ten days, should it deem one is justified.

¶19.   **THE JUDGMENT OF THE MARION COUNTY YOUTH COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.  CARLTON, FAIR AND WESTBROOKS, JJ., NOT PARTICIPATING.**