GRIFFIS, P.J., for the Court:
¶ 1. S.T.[1] appeals the Harrison County Youth Court’s judgment finding that aggravated circumstances negated the requirement of the Mississippi Department of Human Services (DHS) to work toward reunifying her with her son, T.T. S.T. contends that the youth court erred: (1) in adjudicating T.T. a neglected child, and subsequently denying S.T.’s motion for reconsideration of the court’s order adjudicating T.T. to a neglected child; (2) finding “aggravated circumstances”; and (3) denying S.T.’s request for relative placement. We affirm the youth court’s judgment adjudicating T.T. a neglected child and its finding of aggravated circumstances. We find that the issue of relative placement is not ripe for review by this Court.
FACTS
¶ 2. On August 5, 2010, DHS received an alert of potential abuse from Biloxi Regional Hospital stating S.T. was in the hospital to give birth to a child. The hospital had received an alert from the Mobile, Alabama, Department of Human Resources (DHR) stating S.T. had two other children already in the custody of DHR, and DHR felt it was important for the newborn to be safe and free from abuse. On August 8, 2010, DHS picked up T.T., the natural child of S.T., from the hospital and placed him in foster care.
¶ 3. On November 2, 2010, the youth court held an adjudicatory hearing. At the hearing, DHS child protection worker Oki Ragins testified about the information received from DHR. S.T.’s history with DHR began when her oldest child, C.H., was taken to the hospital with multiple rib fractures. DHR began an abuse investigation of S.T. and her boyfriend B.H.; but, before C.H. was taken out of the custody of S.T., C.H. died, allegedly as a result of Shaken Baby Syndrome. B.H. was criminally charged with the death of C.H.; however, his trial resulted in a hung jury.
¶ 4. S.T. gave birth to her second child, B.H. Jr., after the death of C.H. DHR *1285 placed B.H. Jr. in its custody because of the ongoing investigation and B.H.’s criminal trial for C.H.’s death. Since B.H.’s trial ended in a hung jury, DHR began a reunification plan for S.T. and B.H. Jr. Due to subsequent alleged abuse of her third child, this plan was not realized.
¶ 5. After B.H. Jr., S.T. gave birth to J.T., who was allowed to go home from the hospital with S.T. because the investigation into C.H.’s death was no longer pending. J.T. soon arrived at the hospital with unexplained rib fractures, as well as fractures to his tibia and femur. S.T. stated the leg fractures were due to a fall from an infant swing, but the rib fractures were never explained.
¶ 6. B.H. Jr. and J.T. were both placed in DHR custody because of the pattern of abuse while in the care of S.T. As of the hearing for T.T., DHR’s permanent plan for B.H. Jr. was adoption after a series of attempts at reunification had failed. Based on this history of alleged abuse, DHS removed T.T. from the custody of S.T.
¶ 7. At T.T.’s adjudicatory hearing, S.T. introduced several letters written by coworkers, her boss at Keesler Air Force Base, and a psychologist also employed at Keesler. These letters addressed S.T.’s caring nature and her ability to parent T.T. The letters, with the exception of the letter from the psychologist, failed to discuss her extensive involvement with DHR.
¶ 8. On December 7, 2010, the youth court found T.T. to be a neglected child. Further, the youth court found aggravated circumstances, under Mississippi Code Annotated section 42-21-603 (Supp.2011), because of the “chronic abuse” detailed in her DHR file. The youth court held a joint permanency and disposition hearing on December 22, 2010, finding reunification with S.T. was not in the best interest of T.T. The youth court held T.T. should remain in the custody of Harrison County DHS and that DHS should prepare the necessary paperwork to terminate S.T.’s parental rights. S.T. now appeals the youth court’s judgment.
STANDARD OF REVIEW
¶ 9. Our standard of review in this case was stated by the supreme court as follows:
This Court’s standard of review of Youth Court cases is limited. The trier of fact at a Youth Court hearing is the Youth Court judge. When reviewing the evidence, we do not proceed de novo. Rather, when the Youth Court makes an adjudication of neglect, this Court considers all the evidence considered by the Youth Court in the light most favorable to the State. If the evidence so considered is opposed to the finding of the Youth Court with such force that reasonable men could not have found as the Youth Court did by a preponderance of the evidence, this Court must reverse. However, if there is substantial evidence in the record supporting the adjudication of the Youth Court, evidence of such quality and weight that, even under the “beyond a reasonable doubt” standard, the Youth Court might reasonably have ruled as it did, we must affirm.
In re D.O., 798 So.2d 417, 421 (¶ 13) (Miss. 2001) (internal citations omitted).
ANALYSIS

1. Whether the youth court erred in adjudicating T.T. a neglected child.

¶ 10. S.T. argues there was insufficient evidence presented to the youth court to *1286 find that T.T. was a neglected child because DHS failed to conduct any investigation into the alleged abuse upon which the youth court based its order. She contends the youth court should have granted her motion to reconsider.
¶ 11. Mississippi Code Annotated section 43-21-561(3) (Supp.2011) states:
If the court finds from a preponderance of the evidence that the child is a neglected child, an abused child, a dependent child or a child in need of special care the youth court shall enter an order adjudicating the child to be a neglected child, an abused child, dependent child or a child in need of special care.
Mississippi Code Annotated section 43-21-105(Z)(i), (iv) (Supp.2011) defines “neglected child” as one “[w]hose parent, guardian or custodian or any person responsible for his ■ care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, ... or other care necessary for his well-being,” or one “[w]ho, for any reason, lacks the care necessary for his health, morals or well-being.”
¶ 12. In In re E.S., the supreme court affirmed the youth court’s finding that the siblings of a child who had been sexually abused by her father were also neglected and abused children within the meaning of the Youth Court Act. In re E.S., 567 So.2d 848, 849 (Miss.1990). The court quoted In re A.K.S., 602 S.W.2d 848, 851 (Mo.Ct.App. 1980), stating: “the harm to a sibling, potential ... harm done to another child, is sufficient to justify intervention of the court to remove the sibling from the harmful environment.” In re E.S., 567 So.2d at 850. The youth court’s finding of neglect was affirmed based on the potential harm to the victim’s siblings. Id.
¶ 13. Here, substantial evidence supports the findings of the youth court. S.T. has two children in the custody of DHR due to serious instances of alleged and adjudicated abuse. B.H. Jr. has a permanent plan of adoption due to the failure of S.T. “to identify her diminished protective capacity.” J.T. has a history of broken ribs, a broken tibia, and a broken femur. Further, C.H. died, allegedly by Shaken Baby Syndrome. The record does indicate S.T. attempted to explain some of the injuries to C.H., B.H. Jr., and J.T.; however, S.T. simply cannot explain C.H.’s and J.T.’s broken ribs.
¶ 14. Not only are there several instances of documented injuries to these children, but the record is clear that S.T. continued to have a relationship with her boyfriend, B.H., who was accused of the abuse. The DHR workers documented instances where S.T. stated she was no longer seeing B.H.; however, evidence contradicts that her relationship with B.H. has ended. This evidence includes Facebook pictures of B.H. with J.T. claiming J.T. is his son.
¶ 15. Although S.T. argues DHS failed to conduct its own investigation into the alleged abuse of the other children, the record is clear regarding the two children currently in the custody of DHR. The record supports the youth court’s finding that S.T. had been responsible for a series of abusive situations. Accordingly, viewing the evidence in the light most favorable to the State, the youth court’s denial of the motion to reconsider was not in error because' substantial evidence supports the youth court’s finding. We find this issue is without merit.

2. Whether the youth court erred in finding aggravated circumstances.

¶ 16. S.T. argues insufficient evidence supports the youth court’s finding of *1287 “aggravated circumstances” under Mississippi Code Annotated section 43-21-603 (Rev.2009) because DHR’s removals of B.H. Jr. and J.T. are not final decisions. Section 43-21-603(7)(c) states:
(c) Reasonable efforts to maintain the child within his home shall not be required if the court determines that:
(i) The parent has subjected the child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse[,] and sexual abuse; or
[[Image here]]
(iii) The parental rights of the parent to a sibling have been terminated involuntarily; and
(iv) That the effect of the continuation of the child’s residence within his own home would be contrary to the welfare of the child and that placement of the child in foster care is in the best interests of the child.
Here, the youth court found “the physical abuse, alleged and adjudicated, by the siblings of [T.T.] — [C.H., B.H. Jr., and J.T.]— is considered by this Court as tantamount to ‘chronic abuse.’ ”
¶ 17. The supreme court held in In re S.A.M., 826 So.2d 1266, 1274-75 (¶19) (Miss.2002):
The paramount concern in determining the proper disposition is the best interest of the child, not reunification of the family. Furthermore, in G.Q.A. v. Harrison [County Department] of Human [Services], 771 So.2d 331, 336 (Miss. 2000), this Court emphasized that the polestar consideration in determining disposition is the best interest of the child.
(Internal citations omitted).
¶ 18. In the present case, the youth court found that the best interest of T.T. required that proceedings begin to terminate S.T.’s parental rights without a six-month period to work towards reunification with S.T. The youth court based this finding on DHR’s extensive file on T.T.’s siblings. The alleged and adjudicated abuse of the two children still in DHR custody and the deceased child is extensive. Each child has experienced broken bones that were unexplained by S.T. Further, DHR’s permanent plan for B.H. Jr. is for him to be adopted and S.T.’s parental rights terminated.
¶ 19. As we stated above, “[a] court may find that if one child is abused, the child’s siblings are neglected. The basis is that a sibling has been harmed, and the potential harm to the other child is sufficient to warrant both children being removed from the harmful environment.” S.C. v. State, 795 So.2d 526, 532 (¶27) (Miss.2001) (citations omitted).
¶ 20. We find in the record that sufficient evidence documents the abuse of T.T.’s siblings. Based on this evidence, the potential harm to T.T. warrants his removal from the environment. The youth court’s finding that remaining in S.T.’s custody was not in the best interest of T.T. is supported by the record. Further, the youth court’s finding of chronic abuse is within the statutory guidelines. Accordingly, this issue is without merit.

3. Whether the youth court erred in denying S.T.’s request for family placement.

¶ 21. S.T. contends the youth court erred by failing to consider placing T.T. in the custody of her sister E.T. At T.T.’s hearing, S.T. introduced an affidavit signed by E.T. that S.T. had received by fax the morning of the hearing. The affi *1288 davit was sworn and subscribed by E.T. on December 22, 2010, the date of the joint permanency and disposition hearing. In the affidavit, E.T. stated under oath: (1) she is an attorney in Louisiana and could not attend the hearing due to a professional commitment; (2) she is ready and willing to have T.T. in her custody if he is unable to be placed with his mother S.T.; (3) she has raised a son that will graduate from high school this year; (4) she has the financial, emotional, and familial support to provide a safe, secure, and loving home for T.T.; and (5) she is willing to complete an application process for permanent placement.
¶ 22. In the youth court judge’s order, the affidavit was not addressed, nor did the youth court discuss the possibility of relative placement. Mississippi Code Annotated section 43-21-609 (Rev.2009) provides:
In neglect and abuse cases, the disposition order may include any of the following alternatives, giving precedence in the following sequence:
(a) Release the child without further action;
(b) Place the child in the custody of his parents, a relative or other person subject to any conditions and limitations as the court may prescribe. If the court finds that temporary relative placement, adoption or foster care placement is inappropriate, unavailable or otherwise not in the best interest of the child, durable legal custody may be granted by the court to any person subject to any limitations and conditions the court may prescribe; such durable legal custody will not take effect unless the child or children have been in the physical custody of the proposed durable custodians for at least one (1) year under the supervision of the Department of Human Services.
¶ 23. Here, T.T. had been in DHS custody since August 8, 2010; however, E.T.’s affidavit was not presented to the youth court until the morning of the disposition hearing on December 22, 2010. This late notice of E.T.’s willingness to take custody of T.T. left no time for DHS to investigate the placement.
¶ 24. Regardless, we find that this issue is not yet ripe for appellate review. Mississippi Code Annotated section 43-21-613(2) (Rev.2009) provides the following:
On motion of a child or a child’s parent, guardian or custodian, the youth court may, in its discretion, conduct an informal hearing to review the disposition order. If the youth court finds a material change of circumstances relating to the disposition of the child, the youth court may modify the disposition order to any appropriate disposition of equal or greater precedence which the youth court could have originally ordered.
S.T. now has the right to request a review of the disposition order and present evidence that E.T. is available for relative placement. The discretion to determine whether the disposition should be modified lies with the youth court, and we decline to review this assignment of error.
¶ 25. THE JUDGMENT OF THE YOUTH COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND *1289 DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J„ DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. We use initials to protect the identity of the minor children.