# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00420-COA

IN THE INTEREST OF A.R.H., A MINOR:                    APPELLANT
REDONN MALONE

v.

JACKSON COUNTY DEPARTMENT OF CHILD                    APPELLEE
PROTECTION SERVICES

DATE OF JUDGMENT:              02/28/2023
TRIAL JUDGE:                   HON. STACIE ELIZABETH ZORN
COURT FROM WHICH APPEALED:     JACKSON COUNTY YOUTH COURT
ATTORNEY FOR APPELLANT:        JESSICA LYNN BATES
ATTORNEY FOR APPELLEE:         MICHAEL WILSON BRELAND
NATURE OF THE CASE:            CIVIL - CUSTODY
DISPOSITION:                   AFFIRMED - 10/22/2024
MOTION FOR REHEARING FILED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Redonn Malone appeals from an order of the Jackson County Youth Court that allowed the Jackson County Department of Child Protection Services (CPS) to bypass reasonable efforts toward reunification of him with his only child, A.H.[1] The youth court had adjudicated the child, who was born drug-addicted, as neglected because of the actions of his mother, Latisha H.[2] At the time of A.H.'s birth, Malone was incarcerated. After a disposition hearing, the youth court that held Malone's violent criminal history constituted

---

[1] We use initials to protect the child's privacy.

[2] Latisha is not a party to this appeal.

sufficient aggravated circumstances under Mississippi Code Annotated section 43-21-603(7)(c) (Supp. 2016)[3] to preclude reasonable efforts for reunification of the child with Malone.

¶2. On appeal, Malone argues that the youth court erred in expanding "aggravated circumstances" under section 43-21-603(7)(c) to include the "violent criminal history" of the father, even when the crimes did not involve the child. Malone further argues that in making its finding of aggravated circumstances, the youth court improperly relied on information outside the record.

¶3. After our review, we find no error. We therefore affirm the youth court's order.

**FACTS**

¶4. In November 2022, Latisha gave birth to A.H. At the time of A.H.'s birth, Latisha tested positive for cocaine, and A.H.'s urine screen was positive for cocaine and fentanyl. At the time of A.H.'s birth, his father, Malone, was incarcerated in the Jackson County Adult Detention Center on charges of felony aggravated assault and felony bond revocation. Latisha and Malone were not married.

¶5. While A.H. was still in the hospital, the youth court entered an emergency custody order placing A.H. in CPS's custody. The youth court also appointed a guardian ad litem (GAL) for A.H. and set a shelter hearing for November 16, 2022.

¶6. At the shelter hearing, the youth court heard testimony from Latisha and Malone, as well as CPS worker Naomi McNeely and Youth Court Intake Unit representative Katy

---

[3] We quote subsection (7)(c) of the statute in full in our analysis below.

2

Frazier. McNeely and Frazier both recommended that A.H. remain in CPS's custody until it was confirmed that Malone was A.H.'s father. The youth court agreed and entered an order stating that A.H. would remain in CPS's custody. The youth court also ordered DNA testing for Malone and A.H. to confirm A.H.'s paternity. The youth court entered a separate order referring the matter to the youth court prosecutor's office for formal filing of a neglected child complaint.

¶7. The following day, the Jackson County Youth Court prosecutor filed a one-count petition in youth court alleging that A.H. was a neglected child because "the mother of said minor, Latisha . . . , suffer[ed] from extensive substance use and/or abuse issues," including the use and abuse of "cocaine and fentanyl, causing said substances to be in [A.H.'s] system at the time of birth."

¶8. On December 12, 2022, the youth court conducted an adjudicatory hearing on the youth court prosecutor's petition. Malone was transported from the detention center and was present for the hearing; however, Latisha failed to appear. The record reflects that Malone and A.H.'s DNA test was set for the following day. At the hearing, the youth court asked Malone if he agreed with the allegations that A.H. was a neglected child. The youth court explained to Malone that he could agree or disagree if he personally knew the facts, or he could just say "no contest" if he did not personally know the facts. Malone stated "no contest" to the allegations in the petition. The youth court then reset the matter for December 28, 2022.

¶9. The youth court reconvened the adjudication hearing on December 28, 2022. The

record reflects that Malone was present, but Latisha again failed to appear despite CPS's attempts to contact her. The youth court accordingly found that Latisha had voluntarily made herself absent from the proceedings.

¶10. At the hearing, CPS worker McNeely outlined the reasons that A.H. was taken into custody, explaining that a few days before giving birth Latisha tested positive for cocaine, and immediately after birth A.H. tested positive for cocaine and fentanyl. McNeely also stated that Malone was currently incarcerated in the detention center for felony aggravated assault and felony bond revocation. The youth court then proceeded to adjudicate A.H. as neglected.

¶11. The youth court held a disposition hearing on January 11, 2023. At the hearing, the youth court was informed that the DNA test results confirmed Malone as the biological father of A.H. The court continued the case to January 23, 2023, so that Malone could consult with his court-appointed attorney.

¶12. On January 23, 2023, the court reconvened A.H.'s disposition hearing. After determining that reunification efforts with Latisha should be bypassed, the youth court considered reunification plans for Malone. With regard to Malone, CPS worker McNeely recommended that he enter into a service plan with CPS and complete the rehabilitative tasks set forth by CPS. The service plan recommended a permanency plan of reunification with the parents, along with a concurrent plan of custody with a relative.

¶13. Youth court employee Frazier stated, however, that she did not agree with CPS's service plan. Instead, Frazier requested that the court bypass any reasonable efforts toward

4

reunification of A.H. with Malone based on Malone's "extensive history" of "severe violent crimes" dating back to a domestic violence conviction in 1997 in California. Frazier proceeded to detail several of Malone's crimes, including a conviction in Nevada in 2004 for involuntary manslaughter and several charges between 2013 and 2021 in Mississippi. Frazier also described domestic violence incidents involving Latisha in February, April, May, and July of 2022. Frazier clarified that in the April 2022 incident, Latisha and Malone each claimed the other was the aggressor. Frazier also said that Malone had been indicted for aggravated assault and use of a deadly weapon for stabbing an individual four times at a Lowe's store in September 2021. Frazier presented the surveillance footage of the incident, which was entered into evidence.[4] At the time of the disposition hearing, Malone was incarcerated in connection with the September 2021 aggravated-assault charges. Frazier argued that it would not be in A.H.'s best interest for him to be placed in a home environment where domestic violence had occurred.

¶14. The GAL agreed with Frazier's recommendation to bypass reasonable efforts toward reunification of A.H. with Malone. The GAL opined that based on Malone's "very troubling extensive history" of violence, including domestic violence, "[i]t would be in [A.H.'s] best interest that he not be reunified with [Malone]." The GAL also sought to enter criminal records for both Latisha and Malone into evidence. Malone's counsel objected, but the court

---

[4] During the hearing, the youth court gave Malone's counsel the opportunity to review the surveillance footage. After reviewing the footage, Malone's counsel objected to its relevancy, arguing that section 43-21-603(7)(c) refers to violence toward a child, and the incident at Lowe's did not involve violence toward a child. It is unclear from the record when the court ruled on Holtz's objection, but a disc containing the surveillance footage does appear in the record as evidence.

made no ruling on the objection.[5]

¶15. The youth court asked Malone's attorney for his position on bypassing reasonable efforts of reunification of A.H. with Malone.[6] Malone's counsel argued that according to the operative words in section 43-21-603(7)(c), parental reunification can only be bypassed at the disposition stage where the aggravated circumstances involved a child. Malone's counsel asserted that none of the crimes detailed by Frazier involved a child, so "the plain reading of the statute . . . simply does not apply." Malone's counsel also objected to the consideration of Malone's criminal record as an aggravating circumstance precluding reunification because Malone had no notice that the issue of reunification would be contested.

¶16. The youth court also questioned CPS about how reunification could work with someone who was incarcerated. CPS worker McCrory responded:

> It's policy that our first plan be reunification, to work with the family to . . . put services in the home to help with the issues that they have. However, the court can rule how, but we have to work with reunification of the parent unless he did something to a child. That's our policy.

---

[5] The exhibit list does not reflect any police records entered into evidence at the hearing. However, the record contains "Booking Listing Reports" for both Latisha and Malone. These documents were filed with the youth court on January 5, 2023. Although the GAL indicated that these records were from the Pascagoula Police Department, our review of these documents shows that the majority of the reports are from the Moss Point Police Department.

[6] During the hearing, the youth court referred to two statutes that deal with parental rights and reasonable efforts for reunification: section 43-21-603(7)(c) and Mississippi Code Annotated section 93-15-117 (Rev. 2018). Section 43-21-603(7)(c) provides the conditions for bypassing parental reunification at the disposition-hearing stage in youth court proceedings after a child has been found to be neglected. Section 93-15-117, however, deals with parental reunification in a termination-of-parental-rights proceeding. Because this matter concerns the youth court's decision to bypass reasonable efforts for reunification at the disposition-hearing stage, section 43-21-603(7)(c) applies.

6

¶17. The youth court acknowledged that Malone was excited about being a father for the first time in his life, but the court explained that it was ultimately tasked with making decisions that are in the best interests of A.H. The youth court stated that it needed to decide whether to adopt the service plan recommended by CPS or whether to bypass reasonable efforts toward reunification. The youth court ruled that it would "take the disposition under advisement pending review and consideration of any case law or briefs provided by [the GAL] or [Malone's counsel] on the issue of bypass of reasonable efforts or aggravated circumstances."

¶18. On February 28, 2023, the youth court issued its disposition order. The youth court stated that it accepted CPS's recommendation to bypass reasonable efforts for Latisha; however, the youth court declined to accept CPS's recommendation to reunify A.H. with Malone. The youth court found that pursuant to section 43-21-603(7)(c), "aggravated circumstances exist in this matter such that reasonable efforts to maintain the child within the home of his father shall not be required." The youth court explained that Malone "has an extensive violent criminal history as well as history of drug use . . . . [And [h]e is presently incarcerated awaiting trial on aggravated assault." The youth court then detailed Malone's criminal history as follows:

- In 1997, he was found guilty of domestic violence in California.

- In 2002, he was found guilty of possession of drug paraphernalia and forgery in California.

- In 2005, he was found guilty of voluntary manslaughter with use of a deadly weapon in Nevada.

7

- In 2013, he was found guilty of possession of paraphernalia.

- In 2014, he was found guilty of possession of a crack pipe.

- In 2015, he was found guilty of two separate instances of possession of a crack pipe and one instance of disorderly conduct for failure to comply with law enforcement.

- In 2016, he was found guilty of possession of a crack pipe.

- In 2020, he overdosed on heroin.

- In 2020, he was charged with disorderly conduct and resisting arrest.

- In 2021, he was found guilty of simple possession of marijuana and a glass pipe with white residue.

- In 2021, he was indicted for aggravated assault with a deadly weapon. He was out on bond, which was revoked when he was subsequently charged with domestic violence. He remains at the Jackson County Adult Detention Center awaiting trial.

- In 2022, he was found guilty of domestic violence, public drunk, and resisting arrest.

- In 2022, he was also charged with three separate counts of domestic violence.

- In 2023, he appeared in court with a black eye as a result of a fight at the ADC.

¶19. The youth court ultimately found that Malone's violent criminal history was extensive enough to warrant aggravated circumstances sufficient to bypass reasonable efforts for reunification between A.H. and Malone. The youth court explained that A.H.'s placement in Malone's home after Malone's release from incarceration "would be contrary to the welfare and best interests of [A.H.]." The youth court ruled that A.H. would remain in CPS custody and set a permanency hearing for March 27, 2023.

8

¶20. On March 27, 2023, the youth court held a permanency hearing to determine A.H.'s placement. CPS worker McNeely presented the proposed permanency plan for A.H., which was to terminate Malone's parental rights and ultimately place A.H. with a relative.

¶21. Malone and his counsel were present at the hearing and objected to the court's February 28, 2023 disposition order bypassing reunification with Malone. The youth court restated its decision that Malone's extensive violent criminal history was an aggravated circumstance that warranted bypassing reasonable efforts to reunify A.H. with Malone. The youth court explained that prior to making its determination, it considered the extensive briefs provided by counsel. The youth court then ordered CPS to proceed with the necessary paperwork to begin the process of terminating Malone's parental rights. The court adopted CPS's proposed permanency plan of termination of rights and adoption with a concurrent plan for placement with a relative.

¶22. On March 27, 2023, Malone pled guilty to aggravated assault in circuit court and was sentenced to serve fifteen years in custody and five years of post-release supervision. On that same day, Malone appealed the youth court's February 28, 2023 disposition order bypassing reunification efforts.

**STANDARD OF REVIEW**

¶23. "Our standard of review in youth court cases is limited." *Kevin v. Miss. Dep't of Child Prot. Servs.*, 341 So. 3d 1014, 1018 (¶9) (Miss. Ct. App. 2022). "The youth court judge sits as the trier of fact." *Id*. This Court will only reverse a youth court's findings "if reasonable men could not have found as the youth court did by a preponderance of the

9

evidence[.]" *In re S.A.M.*, 826 So. 2d 1266, 1274 (¶17) (Miss. 2002).

## DISCUSSION

### I.    Aggravated Circumstances Pursuant to Section 43-21-603(7)(c)

¶24.    Malone argues that the youth court failed to correctly apply the statutory criteria for bypassing reunification at the disposition stage of the youth court proceedings.  Specifically, Malone argues that the youth court erred in expanding "aggravated circumstances" in 43-21-603(7)(c) to include his "violent criminal history," where that criminal history did not involve crimes against A.H. or any other child.

¶25.    After the youth court adjudicates a child neglected,[7] the youth court will then hold a disposition hearing to determine if reasonable efforts to reunify the child with his family can be undertaken or should be bypassed.[8]  We recognize that from the time a child is taken into CPS custody and placed into foster care, CPS is statutorily required to make reasonable efforts to reunite the family.  However, at the disposition stage of youth court proceedings, a youth court may bypass reasonable efforts to reunite a child who has been adjudicated neglected when certain criteria have been met.  Section 43-21-603(7)(c) states:

> (c)    Reasonable efforts to maintain the child within his home shall not be
> required if the court determines that:
>
> (i)    The parent has subjected the child to aggravated
>        circumstances, *including, but not limited to,*
>        abandonment, torture, chronic abuse and sexual abuse; or
>
> (ii)    The parent has been convicted of murder of another child

---

[7] *See* Miss. Code Ann. § 43-21-551 (Rev. 2021).

[8] *See* Miss. Code Ann. § 43-21-601 (Rev. 2021).

10

of that parent, voluntary manslaughter of another child of that parent, aided or abetted, attempted, conspired or solicited to commit that murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of that parent; or

(iii) The parental rights of the parent to a sibling have been terminated involuntarily; and

(iv) *That the effect of the continuation of the child's residence within his own home would be contrary to the welfare of the child and that placement of the child in foster care is in the best interests of the child.*

Miss. Code Ann. § 43-21-603(7)(c) (emphasis added).[9] To be clear, the language of section 43-21-603(7)(c) requires that the proof establish one of the criteria in subsections (i)–(iii) *and* the best interests of the child criteria in subsection (iv) before reunification efforts may be bypassed.

¶26. The record reflects that at A.H.'s disposition hearing, youth court employee Frazier requested that the youth court bypass any reasonable efforts toward reunification of A.H. with Malone based on Malone's "extensive history" of "severe violent crimes." Frazier provided the youth court with details of Malone's criminal history, including several domestic violence incidents involving A.H.'s biological mother. Frazier opined that it would not be in the best interests of A.H. to be placed in a home environment where domestic violence had occurred, and the GAL agreed.

¶27. The youth court ultimately entered a disposition order finding that aggravated

---

[9] As stated above, the criteria and level of proof needed for bypassing reunification efforts at a disposition hearing should not be confused with the criteria and proof needed to terminate parental rights under section 93-15-117. *See supra* note 6.

circumstances existed pursuant to section 43-21-603(7)(c) that allowed the youth court to bypass reasonable efforts to reunify A.H. with Malone. In the order, the youth court explained that Malone "has an extensive violent criminal history as well as history of drug use. He is presently incarcerated awaiting trial on aggravated assault." The youth court included a list of Malone's criminal history in the order, which we listed in full above.

¶28. The youth court acknowledged that "being incarcerated or having a criminal history is not per se reason to bypass reasonable efforts"; however, the youth court determined that "the violent history of this father is so extensive as to warrant a finding of aggravated circumstances in this matter as placement in the father's home, if, and when he is released from incarceration, would be contrary to the welfare and best interests of the minor child." In making its determination that reasonable efforts for reunification with Malone were not required, the youth court cited *C.P. v. Lowndes Cnty. Dep't of Child Prot. Servs.*, 349 So. 3d 1209, 1221 (¶35) (Miss. Ct. App. 2022), and acknowledged that "[t]he paramount concern in determining the proper disposition is the best interest of the child, not reunification of the family."

¶29. While factually different from the case at hand, this Court's opinion in *C.P.* provides clarity and guidance in understanding the aggravated circumstances criteria as set forth in section 43-21-603(7)(c), which is the issue currently before us. In *C.P.*, the youth court adjudicated the minor child, Alexis, neglected. *Id*. at 1212 (¶3). At the disposition hearing, the youth court found that pursuant to section 43-21-603(7)(c), aggravated circumstances existed that allowed the court to bypass reasonable efforts to maintain Alexis in the family

home, including both parents' "intellectual and mental limitations." *Id*. at 1213 (¶4). Eventually, the youth court terminated the parents' rights. *Id*. at 1219 (¶26). Alexis's parents appealed and argued, in part, that the youth court "erred in interpreting aggravated circumstances to include [the parents'] intellectual and mental limitations." *Id*. at 1222 (¶37).

¶30. On appeal, this Court found that the youth court did not err in bypassing reasonable efforts for reunification between Alexis and her parents under section 43-21-603(7)(c). *Id*. This Court explained:

> We agree that intellectual disabilities cannot be grouped in the same category with extreme aggravated circumstances such as abandonment, torture, chronic abuse, or sexual abuse as listed in section 43-21-603(7)(c)(i). *However, the statute is not an exhaustive list of aggravated circumstances, hence the words "including, but not limited to."* Although it cannot be grouped with that extreme category of aggravated circumstances, a severe intellectual disability such as [the mother's] is still an aggravated circumstance nonetheless. At trial, [the mother] testified that she had just turned forty years old. However, despite this, [the doctor] stated that [the mother] functioned on the behavioral level of an eleven-year-old. In addition, [the social worker] testified that [the mother] was unable to meet her own basic needs, let alone the basic needs of a minor child. Because of [the mother's] severe intellectual disability, we hold that the youth court did not err in finding that placement within the parents' home would be contrary to the welfare and best interests of Alexis. Moreover, given the aggravating circumstances and the other evidence in the record that placement of Alexis in the parents' home was contrary to the child's welfare, we hold that the youth court did not err in determining that reasonable efforts for reunification between Alexis and her parents under [section] 43-21-603(7)(c) was not required.

*Id.* (emphasis added).

¶31. In the case before us, we find that the youth court, as the trier of fact, was within its discretion to determine that Malone's extensive criminal history constituted aggravated circumstances under the statute. It is clear from our precedent that the criteria listed in

13

section 43-21-603(7)(c)(i) "is not an exhaustive list of aggravated circumstances[.]" *Id.* It is also clear that "[t]he paramount concern in determining the proper disposition is the best interest of the child, not reunification of the family." *Id.* at 1221 (¶35); *see also In re S.A.M.*, 826 So. 2d at 1275 (¶19) ("[T]he polestar consideration in determining disposition is the best interest of the child."). The disposition order in this case reflects that the youth court followed statutory guidelines in making its decision to bypass reasonable efforts to reunify A.H. with Malone: the youth court found the existence of aggravated circumstances under subsection (i) and also considered A.H.'s best interests under subsection (iv).

¶32. Based on the foregoing, we find that the youth court did not err in determining that reasonable efforts for reunification of Malone with A.H. were not required under section 43-21-603(7)(c). We therefore affirm the youth court's disposition order.

## II. Testimony and Evidence from the Disposition Hearing

¶33. Malone next asserts that in making its determination as to A.H's disposition, the youth court erred in considering information outside the record—specifically, Malone's prior convictions and alleged crimes.

¶34. Section 43-21-603(2) governs the testimony and evidence that can be presented at disposition hearing:

> All testimony shall be under oath unless waived by all parties and may be in narrative form. *The court may consider any evidence that is material and relevant to the disposition of the cause, including hearsay and opinion evidence.* At the conclusion of the evidence, the youth court shall give the parties an opportunity to present oral argument.

(Emphasis added). When reviewing a youth court's disposition order, this Court "considers

14

all the evidence before the youth court in the light most favorable to the State." *Kevin*, 341 So. 3d at 1019 (¶9).

¶35. The record reflects that the only exhibit entered into evidence at the disposition hearing was the judgment terminating Latisha's parental rights to another child not involved in the proceeding before us. However, the youth court docket shows that on January 5, 2023, prior to the disposition hearing, fifty-three pages of booking information and incident reports involving Malone were filed in the youth court, as well as Malone's police report from Las Vegas, Nevada. The fifty-three pages of booking information for Malone includes a "booking list report" of offenses from November 2014 through July 2022 from the Jackson County Sheriff's Office, the Pascagoula Police Department, and the Moss Point Police Department. The booking list report includes Malone's arrests for domestic violence and aggravated assault.

¶36. At the January 23, 2023 disposition hearing, youth court employee Frazier detailed several of Malone's crimes, including his 2004 involuntary manslaughter conviction in Nevada and various charges in Mississippi from 2013 through 2021, as well as Malone's indictment for aggravated assault and use of a deadly weapon stemming from an incident in September 2021. As stated, at the time of the disposition hearing, Malone was incarcerated in connection with the September 2021 aggravated assault charges. Frazier also described four domestic violence incidents in 2022 involving Latisha. The record shows that Frazier presented the surveillance footage of the September 2021 incident at Lowe's. The record shows that this footage was entered into evidence; however, the exhibit list from the January

15

23, 2023 disposition hearing does not list the footage as an exhibit. The GAL also sought to enter criminal records for both Latisha and Malone, purportedly referencing the booking information filed in the youth court on January 5, 2023.

¶37. As stated, section 43-21-603(2) allows the youth court to "consider any evidence that is material and relevant to the disposition of the cause, including hearsay and opinion evidence." We find that the evidence and testimony regarding Malone's extensive criminal history was material and relevant to the disposition hearing, especially in light of the fact that our "paramount concern in determining the proper disposition is the best interest of the child[.]" *C.P.*, 349 So. 3d at 1221 (¶35).

¶38. Malone also argues that because the "documentation and information" of his alleged crimes was not testified to or entered into evidence, he was deprived of his ability to address those allegations and claims at the disposition hearing. However, the transcript from the disposition hearing refutes Malone's argument. Malone was represented by counsel at the disposition hearing, and the transcript shows that Malone's counsel objected to the admission of Malone's criminal records into evidence. Additionally, after reviewing the surveillance footage of the September 2021 incident at Lowe's, Malone's counsel objected to its relevancy, arguing that section 43-21-603(7) refers to violence toward a child, and the Lowe's footage did not involve that kind of violence.

¶39. After reviewing the record and transcript, and keeping in mind the broad discretion granted to youth courts by section 43-21-603(2) regarding the evidence and testimony that can be presented and considered at disposition hearings, we find no error.

16

**CONCLUSION**

¶40.	Because we find no error, we affirm the youth court's disposition order.

¶41.	**AFFIRMED.**

**BARNES, C.J., LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND WESTBROOKS, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.; WILSON, P.J., JOINS IN PART. WEDDLE, J., NOT PARTICIPATING.**

**McDONALD, J., DISSENTING:**

¶42.	I respectfully dissent from the majority opinion, which deprives Malone of ever having a relationship with his only child, because, in my opinion, the youth court did not correctly apply the criteria for bypassing reunification at the disposition stage of the proceedings as set out in Mississippi Code Annotated section 43-21-603(7)(c) (Rev. 2021). Both the youth court and the majority mistakenly rely on *C.P. v. Lowndes County Department of Protection Services*, 349 So. 3d 1209 (Miss. Ct. App. 2022), and erroneously eliminate the statutorily required analysis for bypassing reunification at the disposition stage.

¶43.	The youth court statutes outline the legal proceedings for handling neglected or abused children, including the filing of a petition alleging neglect,[10] a hearing to adjudicate whether the child is neglected or abused,[11] a dispositional hearing to determine if reasonable

---

[10] Mississippi Code Annotated sections 43-21-451 to 509 (Rev. 2021) address filing a  petition and issuing summonses.

[11] Mississippi Code Annotated sections 43-21-552 to -561 (Rev. 2021) address the adjudication hearing.

17

efforts to reunify the family in the family's home can be undertaken or should be bypassed,[12] and a permanency hearing to determine the future placement of the child.[13] After these steps are completed, the youth court may proceed to consider a petition to terminate a parent's rights, if necessary, under Mississippi Code Annotated section 93-15-117 (Rev. 2021).

¶44.     From the time a child is taken into CPS custody and placed into foster care, CPS is statutorily required to make reasonable efforts to reunite the family under Mississippi Code Annotated section 43-15-13(2) (Rev. 2023), which provides:

> [T]he Department of Child Protection Services shall establish a foster care placement program for children whose custody lies with the department, with the following objectives:
> . . . .
>
> (b) Preventing the unnecessary separation of children from their families by identifying family problems, *assisting families in resolving their problems and preventing the breakup of the family* where the prevention of child removal is desirable and possible when the child can be cared for at home without endangering the child's health and safety;
>
> (c) Remedying or assisting in the solution of problems that may result in the neglect, abuse, exploitation, commercial sexual exploitation, human trafficking or delinquency of children; [and]
>
> (d) *Restoring to their families children who have been removed*, by the provision of services to the child and the families when the child can be cared for at home without endangering the child's health and safety . . . .

(Emphasis added).

¶45.     At a disposition hearing, the youth court must determine whether these efforts of

---

[12] Mississippi Code Annotated section 43-21-603(c)(7) addresses disposition hearing procedures.

[13] Mississippi Code Annotated section 43-21-613(3)(a) addresses permanency hearing procedures.

reunification should be continued or bypassed. Pursuant to section 43-21-603(7)(a)(i) any disposition order bypassing reunification efforts shall specifically find that reasonable efforts have been made to maintain the child within his own home, but that the circumstances warrant his removal, and there is no reasonable alternative to custody.

¶46. Section 43-21-603(7)(c) sets out when reasonable efforts for reunification may be bypassed at the disposition stage of the proceedings:

> (c) Reasonable efforts to maintain the child within his home shall not be required if the court determines that:
>
> > (i) The parent has subjected the child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse and sexual abuse; *or*
> >
> > (ii) The parent has been convicted of murder of another child of that parent, voluntary manslaughter of another child of that parent, aided or abetted, attempted, conspired, or solicited to commit that murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of that parent; *or*
> >
> > (iii) The parental rights of the parent to a sibling have been terminated involuntarily; *and*
> >
> > (iv) That the effect of the continuation of the child's residence within his own home would be contrary to the welfare of the child and that placement of the child in foster care is in the best interests of the child.

(Emphasis added). This statute creates a two-prong test that must be met before reunification placement efforts with a parent can be bypassed at the disposition stage. First, the youth court must find that one of the conditions in section 43-21-603(7)(c)(i)-(iii) exists (i.e., the parent subjected the child to aggravating circumstances, or murdered another child of the parent, or the parent's rights to another child have already been terminated). After

19

determining that one of those criteria has been proved, the youth court must then decide whether the child's residing within his parent's home would be contrary to the child's welfare and whether foster care is in the child's best interests. The State must establish these two prongs by a preponderance of the evidence. *In re D.O. and T.O.*, 798 So. 2d 417, 421 (¶13) (Miss. 2001).

¶47. In citing the statutory requirements, the majority emphasizes subsection (iv) (the best interest of the child criteria). Although the majority states that proof of one of the subsections in the first prong of the test is still necessary (i.e., proving subsection i, ii, or iii), the majority goes on to hold that only partial proof of subsection (i) is sufficient, namely proof of aggravating circumstances without proof that the child was subjected to those aggravating circumstances. The statute clearly requires that the proof fully, not partially, establish one of those other criteria **and** the best interest criteria before reunification efforts may be bypassed.

¶48. The criteria and level of proof needed for bypassing reunification efforts at a disposition hearing should not be confused with the criteria and proof needed to terminate parental rights (TPR) at a TPR hearing under section 93-15-117. Both statutes include language about bypassing reunification. At the disposition stage, section 43-21-603(7)(c) sets out the two-prong analysis discussed above. In TPR proceedings, the State can raise a number of other factors as reasons to bypass reunification and terminate a parent's rights, such as diagnosed mental illness, intentional and continued drug addiction, a parent's

20

unwillingness to provide food, shelter, and medical care for the child, et cetera.[14] In addition,

at the TPR hearing, the State must prove these circumstances by clear and convincing

[14] The other grounds listed in Mississippi Code Annotated section 93-15-121 (Rev. 2021) include:

(a) The parent has been medically diagnosed by a qualified mental health professional with a severe mental illness or deficiency that is unlikely to change in a reasonable period of time . . . ;
(b) The parent has been medically diagnosed by a qualified health professional with an extreme physical incapacitation that is unlikely to change in a reasonable period of time . . . ;
(c) The parent is suffering from habitual alcoholism or other drug addiction and has failed to successfully complete alcohol or drug treatment;
(d) The parent is unwilling to provide reasonably necessary food, clothing, shelter, or medical care for the child; . . .
(e) The parent has failed to exercise reasonable visitation or communication with the child;
(f) The parent's abusive or neglectful conduct has caused, at least in part, an extreme and deep-seated antipathy by the child toward the parent . . . ;
(g) The parent has committed an abusive act for which reasonable efforts to maintain the children in the home would not be required under Section 43-21-603 . . . ; or
(h)(i) The parent has been convicted of any of the following offenses against any child:
　　1. Rape of a child under Section 97-3-65;
　　2. Sexual battery of a child under Section 97-3-95(c);
　　3. Touching a child for lustful purposes under Section 97-5-23;
　　4. Exploitation of a child under Sections 97-5-31 through 97-5-37;
　　5. Felonious abuse or battery of a child under Section 97-5-39(2);
　　6. Carnal knowledge of a step or adopted child or a child of a cohabitating partner under Section 97-5-41; or
　　7. Human trafficking of a child under Section 97-3-54.1; or
(ii) The parent has been convicted of:
　　1. Murder or voluntary manslaughter of another child of the parent;
　　2. Aiding, abetting, attempting, conspiring or soliciting to commit murder or voluntary manslaughter of the child or another child of the parent; or
　　3. A felony assault that results in the serious bodily injury to the child or another child of the parent.

21

evidence as noted in the statute and case law. *See In re Adoption of Z.M.J. v. C.J.*, 365 So. 3d 273, 284 (¶7) (Miss. Ct. App. 2020) ("[I]f established by clear and convincing evidence, any of the eight alternative bases [in section 93-15-121] may be grounds for termination of the parent's parental rights if reunification between the parent and child is not desirable toward obtaining a satisfactory permanency outcome."). Thus, there is a clear difference between the youth court's analysis of the parent's circumstances and behavior to determine whether to bypass reunification efforts *at a disposition stage* of the Youth Court's proceedings and the court's consideration of the family's circumstances and reunification *in a termination of parental rights proceeding.* Because Malone is appealing a youth court's order bypassing reunification at the disposition stage, we should examine the facts in light of section 43-21-603(7)(c).

¶49. Section 43-21-603(7)(c)(i) provides that reunification efforts with a parent may be bypassed at the disposition stage if "*the parent has subjected the child* to aggravated circumstances including, but not limited to, abandonment, torture, chronic abuse and sexual abuse." (Emphasis added); *see In re K.M. v. Jackson Cnty. Youth Ct.*, 365 So. 3d 268, 271 (¶11) (Miss. Ct. App. 2020) (One statutory basis for bypassing reunification is establishing that the parent subjected the child to aggravating circumstances.). The statute itself requires proof of a parent's treatment of the child and whether that treatment could be considered an equivalent of abandonment, torture, chronic abuse, or sexual abuse. Thus, appellate courts reviewing youth court decisions to bypass reunification at the disposition stage have examined whether there was sufficient proof that the parent actually harmed the child, or

22

whether the parent's conduct towards a child's siblings created the potential of harm to the child in question if placed in that environment.[15] In this case, there was no proof that Malone had in the past subjected the child to any aggravating circumstances.

¶50. Nor was there no proof of the criteria for bypassing reunification found in section 43-21-603(7)(c)(i)-(iii). Malone had no other children, so his parental rights to any child of his own had not been previously terminated, nor had he ever murdered a sibling of A.H. Thus, it is clear that the State did not prove any of the three criteria contained in the first prong of section 43-21-603(7)(c)(i)-(iii). Without proving one of the conditions in section 43-21-603(7)(c)(i)-(iii), the youth court cannot bypass reunification efforts at the disposition stage

---

[15] Examples of cases warranting bypassing reunification because of a parent's "actual harm" to a child reunification are *In re D.O.*, 798 So. 2d at 418 (¶1), where three-year-old T.O. was sexually abused by her father, and her younger brother was also determined to be neglected because he resided in the home where the abuse of T.O. occurred, and *Kevin v. Miss. Dep't of Child Prot. Servs.*, 341 So. 3d 1014, 1016 (¶2) (Miss. Ct. App. 2022) (affirming a finding of aggravating circumstances warranting bypass of reunification where a mother threatened to kill herself and her children and sent the father pictures of her brushing a butcher knife against the thigh of her two-month-old baby. *Id.* at 1021 (¶16). In the case at hand, there is no proof, nor could there be, that Malone harmed A.H. because Malone was incarcerated before the child was born and never had custody or access to A.H. to harm him.

The potential for harm to a child based on a parent's conduct towards siblings of the child can also constitute an aggravating circumstance warranting a bypass of reunification. For example, in *T.T. v. Harrison Cnty. Dept. of Hum. Servs.*, 90 So. 3d 1283, 1284 (¶2) (Miss. Ct. App. 2012), we affirmed the Harrison County Department of Human Services (DHS) taking custody of three-day-old T.T. because other siblings of the child had previously been placed in DHS custody for unexplained bruises and multiple bone fractures. *Id.* at 1284-85 (¶¶2-6); *see also In re K.M. v. Jackson Cnty. Youth Ct.*, 365 So. 3d 268, 271 (¶13) (Miss. Ct. App. 2020) (mother's neglect of K.M.'s siblings reflected in broken bones and malnutrition warranted bypassing reunification with K.M.). In the case at hand, there was no proof that Malone had any contact with Latisha's other children who were taken from her. So there was no evidence of Malone's harming a sibling of A.H. to support a finding that Malone could potentially harm A.H.

by simply saying that to do so would be in the best interest of the child under subsection 43-21-603(7)(c)(iv).

¶51.    The majority eliminates the clear statutory requirement of proving all elements of one of the subsections in the first prong of the two-prong test to bypass reunification before determining the second, the best interest of the child.  It also cites *C.P. v. Lowndes County Department of Protection Services*, 349 So. 3d 1209 (Miss. Ct. App. 2022), out of context as if it supports such a ruling.  But a thorough reading of *C.P.* shows that it does not.  In that case, shortly after C.P.'s birth, the hospital called CPS with concerns about the mother's ability to meet the baby's needs.  *Id*. at 1211 (¶2).  The mother had an IQ of 46 and difficulty comprehending and expressing herself.  *Id*. at 1211 n.2.  Later, a psychologist determined the mother functioned on the level of an eleven-year-old child.  *Id*. at 1215 (¶10).  The father, who had borderline intelligence, *id*. at (¶12), often left the mother alone all day with nothing to eat.  *Id*. at 1216 (¶16).  Another child of the mother, who was subjected to the same circumstances, had already been placed in CPS custody.  *Id*. at 1213 (¶4).  Eventually, the parental rights to that child were terminated.  *Id.* at 1221 (¶34).

¶52.    On appeal, prior to discussing the termination hearing, this Court first reviewed the proceedings at the prior disposition hearing, which are relevant to the case at hand.  There, the State proved that the parents had limited intellectual and childcare ability, *id*. at 1214 (¶7), which the youth court had found to be aggravating circumstances.  *Id*. at 1212-13 (¶4).  However, the State further showed that these aggravating circumstances had been directed to a sibling of C.P. and had resulted in the parents' parental rights to that sibling being

24

terminated. *Id*. at 1221 (¶34). Because the youth court had previously terminated the parents' rights to one of C.P.'s siblings, the criteria for bypassing reunification in section 43-21-603(7)(c)(iii) was satisfied. *Id*. Only after we found the threshold criteria had been met did this Court then affirm the youth court's finding on the best interest of the child. Although we commented the paramount concern is the best interest of the child, not reunification, we never relieved the State of its obligation at the disposition stage of the proceedings to show that the parent subjected the child to whatever aggravating circumstances it found.[16] In fact, the youth court in *C.P.* faithfully followed the criteria set forth in section 43-21-603(7) when considering the case at the disposition stage.

¶53. The critical statutory requirement of showing that a parent *subjected the child to* the aggravating circumstances that may exist before bypassing reunification with the family at the disposition stage is consistent with the overall mandate to reunite families when possible. Establishing that causal connection is necessary, in my opinion, to avoid well-meaning state agencies or courts from finding something negative in a parent's past and jumping to the conclusion that a child's best interest is not served by the child's having a parent with that kind of history. That logic would destroy a family at the early stages of child neglect proceeding, rather than help work through their problems and reunite them. Therefore,

---

[16] Aggravating circumstances became a primary issue at the more expansive hearing on the termination of parental rights. *Id*. at 1222 (¶37). But even then, the youth court determined, and we agreed, that parental reunification was not required because the child was subjected to the "aggravating circumstance" of the parents' inability to care for the child, just as the child's sibling had faced. *Id*. We noted testimony that because of her severe intellectual disability, the mother was "unable to meet her own basic needs, let alone the basic needs of a minor child." *Id*.

before those reunification efforts are bypassed, the statute requires a showing that the parent has subjected the child to aggravating circumstances and then move to determine the best interests of the child.

¶54. The majority ignores the statutory requirement that the child be subjected to the aggravated circumstances shown, and the youth court in this case did not either and strained to connect the two. Although the youth court correctly found that Malone's criminal record or incarceration were not *per se* sufficient reasons to bypass reunification efforts, to satisfy the "subjecting the child to aggravated circumstances" requirement of section 43-21-603(7)(c)(i), the youth court reasoned:

> While being incarcerated or having a criminal history is not per se reason to bypass reasonable efforts, the violent history of this father is so extensive as to warrant a finding of aggravated circumstances in this matter as placement in the father's home, if, and when he is released from incarceration, would be contrary to the welfare and best interests of the minor child. Therefore, reasonable efforts for reunification between the minor child and his father is not required under Miss. Code Ann. 43-21-603(7)(c).

In essence, the youth court imputed the nature of Malone's crimes (i.e., violent crimes) to conclude that Malone's character was irretrievably violent and then speculate that Malone would in the future, upon his release, subject the child to violent conduct. There is no evidence to support this finding, which I would hold is manifestly wrong.

¶55. First, with nothing but Malone's alleged criminal record before it and no testimony, expert or otherwise, the youth court made a finding that Malone's character was violent, and that because of his character, Malone will be a threat to A.H. in the future. Even our Rules of Evidence prohibit "the admission of evidence of a person's character or character trait to

26

prove that on a particular occasion the person acted in accordance with the character or trait." MRE 404(a) cmt. "The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." *Mitchell v. State*, 110 So. 3d 732, 734 (¶10) (Miss. 2013). If evidence of prior bad acts is not allowed to prove that an individual actually acted in a certain way on a certain occasion, it certainly should not be used to "prove" how that person will act in the future.[17] Thus, in my opinion, the youth court finding that in the future Malone would subject A.H. to behavior similar to that reflected in his past criminal record to satisfy the first prong of the section 43-21-603(7)(c) test was not supported by the record and manifestly wrong.

¶56. Further, the Youth Court's finding that the child would be subjected to Malone's violence in the future is purely speculative in my opinion. We prohibit testimony, even from experts, that is mere speculation. *Corrothers v. State*, 148 So. 3d 278, 294 (¶25) (Miss. 2014) ("Expert testimony will always be deemed unreliable if it is the product of subjective belief or unsupported speculation."). We have held that a criminal conviction cannot rest on "substantial guesswork, speculation and conjecture." *Smoots v. State*, 310 So. 3d 1184, 1190 (¶21) (Miss. Ct. App. 2020) (Without evidence that Smoots possessed illegal drugs, as opposed to two other individuals present, the jury could only guess who was guilty.). While the trier of fact may be allowed to draw inferences from the evidence presented, those

---

[17] The comment to Rule 404 states, "The admissibility standards of Rule 404(b) remain fully applicable to both civil and criminal cases," and they apply in cases in youth court as well. *In re J.T.*, 188 So. 3d 1192, 1200 (¶43) (Miss. 2016) (holding that because some believe that the Rules of Evidence are relaxed in youth court, "we find it necessary to clarify that the Rules of Evidence do apply in youth-court adjudications with full force and effect").

inferences must only be the ones that reasonably could be drawn from the evidence presented and create a "legitimate inference that places it beyond conjecture." *Herrington v. Leaf River Forest Prods. Inc.*, 733 So. 2d 774, 777 (¶8) (Miss. 1999). In this case, it is my opinion that the youth court's finding that A.H. would be subjected to violence if placed with Malone upon Malone's release in the future is not a legitimate inference. It fails to allow for the possibility that Malone, who is now in his fifties, might be rehabilitated if he were given the opportunity to follow the service plan proposed by CPS. CPS had recommended that while in prison, Malone would receive drug treatment, family counseling, and parenting classes. He would be required to attend anger management classes and a domestic violence program. Further, he would be motivated by having visitation with his son, whom even the youth court acknowledged was special to Malone. Accordingly, I would hold that the youth court was manifestly wrong in finding that Malone's violent criminal history subjected A.H. to aggravating circumstances sometime in the future met the criteria established in section 43-21-603(7)(c) for bypassing reunification efforts at the disposition stage of the proceedings.

¶57. In summary, I disagree with the majority that finds the youth court complied with section 43-21-603(7)(c)(i). That subsection clearly requires not only proof of aggravating circumstances but also proof that the child was subjected to them. Because this record does not include such proof, I would reverse and remand for further proceedings.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION. WILSON, P.J., JOINS THIS OPINION IN PART.**